### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**MOHAN PAULIAH, PH.D.**                                                  **PLAINTIFF**

**vs.**                                 **CASE NO: 3:23-cv-3113-CWR-ASH**

**UNIVERSITY OF MISSISSIPPI MEDICAL**
**CENTER, ET. AL.**                                                **DEFENDANTS**

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO UMMC'S MOTION TO STIKE HIS DECLARATION SUBMITTED IN OPPOSITION TO UMMC'S MOTION FOR SUMMARY JUDGMENT

    The Plaintiff admits that he was in a hurry to meet the deadline in submitting his declaration on time. He generally understood that his statements have to be based on personal knowledge, are not to be hearsay, and must contain relevant information.

    The Plaintiff numbered each of the declaration paragraphs so that any objectionable portions could be efficiently addressed by the parties and the Court.

The Plaintiff notes that UMMC may not have included his errata sheet for his deposition, and does so right now.

    The Plaintiff notes that while it is true that his declaration is 43 pages long, UMMC included more than 100 pages of the Plaintiff's deposition as a summary judgment motion exhibit. Doc.12-1. The Plaintiff further notes that he sat for an all-day deposition and, later, his wife was deposed.

Additionally, there is nothing to show that the Plaintiff used his declaration to make arguments that were not set forth in his brief.

## 1. Conclusory and Unsupported Statements

*Paragraph No. 4, Footnote 1. Plaintiff's subjective belief that Dr. Duszak "abruptly terminated his Chairmanship" is unsupported by the documentary evidence in the record.*

Response: The Plaintiff provided a link to a news report that says Duszak is leaving less than three years after becoming Chair of the department. Also see Linkedin message. https://www.linkedin.com/posts/richduszak_appointment-of-chair-of-radiology-activity-7343778793733373952-Bzn-

*Paragraphs 8-9, 25-26. Plaintiff's subjective belief of an expectancy of employment is conclusory and not supported by the documentary evidence in the record, as it is contradicted by the plain language of the referenced recruiting documents in the record.*

Response: The Plaintiff is a party to a contract and is within his rights to interpret those provisions as they relate to his wrongful termination case.

*Paragraph 41. Plaintiff's subjective belief that he was "reinstated" is conclusory and unsupported, as it is contradicted by the referenced document discussing the resulting pay from the "reassignment.*

Response: Paragraph 41 is not conclusory and unsupported. Please read preceding Declaration paragraphs 37 through 40 for context.

*Paragraph 43. Plaintiff's subjective belief that Dr. Duszak was "compelled to reinstate" him is conclusory, unsupported by the documentary evidence in the record, and states an alleged fact outside Plaintiff's personal knowledge and, therefore, lacks a sufficient factual basis.*

Response:  Paragraph 43 is not conclusory and unsupported. Please read preceding Declaration paragraphs 37 through 41 for context.

*Paragraph 46. Much of this statement consists of conclusory and unsupported legal arguments, which are contradicted by the documentary evidence. Plaintiff claims the EEOC response was the first time he heard (1) he had interpersonal difficulty with co-workers; (2) that he failed to follow instructions from his supervisor; (3) that he had maladaptive communication behaviors; or (4) that he was not able to lead major initiatives. However, Plaintiff's claims are belied by the documentary evidence and deposition testimony which clearly show Plaintiff's knowledge of the allegations of problems with communication with his co-workers, failure to follow instructions, and failure to lead major initiatives. For example, Defendants provided an email to Plaintiff dated July 30, 2022 discussing a meeting to "help mend relationships;" an email to Plaintiff dated with staff" and assistance "navigating working relationships for you"; an email to Plaintiff from Dr. Duszak having to follow-up on his instruction from "a couple of weeks ago" requesting Plaintiff to provide a timetable for ACR accreditation "so we don't have the same last minute scramble we did for the TJC this summer"; and an email dated September 16, 2022 explaining the "Herculean" effort that Duszak and other colleagues were*

*forced to take on due to Plaintiff's failures to handle major initiatives. September 16, 2022 regarding "the disruptions you created in your interactions with staff" and assistance "navigating working relationships for you"; an email to Plaintiff from Dr. Duszak having to follow-up on his instruction from "a couple of weeks ago" requesting Plaintiff to provide a timetable for ACR accreditation so we don't have the same last minute scramble we did for the TJC this summer"; and an email dated September 16, 2022 explaining the "Herculean" effort that Duszak and other colleagues were forced to take on due to Plaintiff's failures to handle major initiatives.*

Response: Paragraph 46 of the Declaration is the Plaintiff's factual statement denying that he had ever heard the allegations made against him in UMMC's EEOC position statement.

*Paragraphs 49-50, 66-67, 86-87, 93-100, 103, 109-112, 114-116, 128-149, Appendix AA-Exhibit AA, Appendix AA-Exhibit AB. These paragraphs and appendices contain (1) unsupported statements that are conclusory legal and/or factual arguments, rather than testimony based on the summary judgment record or personal knowledge, and (2) improper statements that merely rehash arguments from Plaintiff's response to Defendants' Motion for Summary Judgment*

Response: 49 and 50 should be read with 51 through 65 to explain Plaintiff's skills. 66 and 67 should be read with 68 through 85 to explain that the Plaintiff provided appropriate audits. 93 through 100, 103, 109-112, 114-116, 128-149 consist of competent testimony.

*Paragraph 71. Plaintiff's subjective belief that he "successfully" completed the ACR annual surveys is conclusory and unsupported by the documentary evidence in the record, as his self-assessment is contradicted by the September 12, 2022 email from Dr. Duszak following up with Plaintiff regarding his two-week delay to provide a timetable for the ACR accreditation.*

Response: The Plaintiff is in the position to know that he completed the annual surveys. Paragraph 71 is corroborated by paragraphs 72-74 of his declaration.

*Paragraph 76. This paragraph contains statements beyond Plaintiff's personal knowledge and presents conclusory arguments rather than statements of fact. Plaintiff, having worked in the department for less than two years, could not possibly know when the first time an ACR manual was submitted to the Radiology department throughout its entire history.*

Response: Plaintiff is competent to make the statement in Paragraph 7.

*Paragraph 82. This paragraph contains statements beyond Plaintiff's personal knowledge and refers to alleged facts outside the record, as Plaintiff is no longer employed with UMMC to know about any alleged "long-term cost savings."*

Response: Paragraph 79 though 85 should be read with Paragraph 81; paragraph 81 provides competent factual testimony in that context.

*Paragraph 83. This paragraph contains statements beyond Plaintiff's personal knowledge and refers to alleged facts outside the record, as he cannot speak to what "initiatives" were allegedly lacking before his employment.*

Response: The Plaintiff is competent to testify about what initiatives were not in place when he commenced working.

*Paragraph 101. This paragraph contains statements beyond Plaintiff's personal knowledge and refers to alleged facts outside the record, as Plaintiff cannot speak to what Dr. Green "knew" about Plaintiff's efforts to obtain board certifications, particularly considering that Plaintiff has admitted to failing twice.*

Response: Green was the then UMMC chairman, and UMMC is a party to the case (e.g., the employer is being sued), and the statement concerns a matter within the scope of the supervisor's employment; the supervisor's knowledge is admissible through the employee's testimony as an agent admission. F.R.E. 801(2)(d)(2); *McCain v. City of Cleveland*, 286 F. Supp. 3d 800,801; 105 Fed. R. Evid. Serv. 182 (N.D. Miss. 2017)(statements made by an agent or employee of the opposing party while in the scope of the agency or employment are not hearsay when offered against the opposing party.)(federal discrimination case).

*Paragraph 127. This paragraph contains statements beyond Plaintiff's personal knowledge and refers to alleged facts outside the record, as he cannot speak to current staffing matters at UMMC.*

Response: Paragraph 127 refers to Dr. Duszak's deposition testimony, which the Plaintiff attached to his summary judgment motion response.

## 2. Inadmissible Evidence

*Paragraphs 33, 39-40, 44-45, 89, 117, 122, Appendix AA-Exhibit AA. These paragraphs and appendices contain impermissible hearsay and, as such, constitute inadmissible evidence to support Plaintiff's opposition to Defendants' Motion for Summary Judgment*

Response: UMMC needs to be more specific in its objections.

## 3. Contradictory Testimony

*Paragraph 19. The testimony that Plaintiff was "recruited by UMMC," copied and pasted from the Amended Complaint, contradicts Plaintiff's deposition testimony that he initiated contact with UMMC when he found the job opening listed on a website. See Doc. 121.1, Plaintiff's epo. at pp. 82 (lines 7-10) ("Q: . . . Do you recall when the recruitment started? A: If I recall correctly, when I applied for the Indeed – through Indeed website.") and p. 82 (lines 21-23) ("Q: How did you learn about the position? A: Through the Internet. Through the Internet, website.").With no explanation for the contradiction, this paragraph must be stricken.*

Response: There is no material contradiction in the testimonies. The word "recruit" appears in both versions.

## 4. Fabricated Testimony

*Paragraphs 115, 126, 140, and 141. These paragraphs all claim Dr. Howard testified that: "No accreditation failure was ever cited against Dr. Pauliah" or "no accreditation failure was ever cited against me," citing page 27:1-3. Again, this citation does not contain the quoted testimony, and there is no such testimony found anywhere in Dr. Howard's deposition. Rather, it appears to be entirely fabricated.*

Response: The Plaintiff attached the entirety of Dr. Howard's deposition testimony to his Summary judgment response. Plaintiff's affidavit comports with Dr. Howard's page 26 deposition testimony.

*Paragraphs 124 and 141. These paragraphs claim that Dr. Howard testified that Plaintiff "did not receive adequate departmental support . . . ", citing pages 33:5 - 34:3 of her deposition testimony. But not only do the pages cited not contain the quoted testimony, there is no such testimony found anywhere in Dr. Howard's deposition. It, too, appears to be entirely fabricated.*

Response: Dr. Howard's testimony discusses the Plaintiff not receiving a laptop.

*Paragraph 138. This paragraph claims that Dr. Robert Morris "admitted under oath that he 'never reviewed' the weekly QC logs and failed to execute quarterly and annual supervisory reviews required by the ACR QC Manual" citing Morris Depo. at p. 36:10-40:3. This alleged testimony does not appear at this cite and appears fabricated. Instead, Dr. Morris was asked whether "MR safety and QC weekly log reviews [were] conducted quarterly or annually, or between quarterly or*

*annually," to which Morris testified that he did not know. When asked if he reviewed "MR annual reports", Dr. Morris testified that he did not know that UMMC had "MR annual reports" or who would have reviewed them. There was no question or testimony regarding any type of supervisory review.*

Response: The Plaintiff attached the Morris deposition in its entity. Morris testifies about logs at pages 48 and 65.

*Paragraphs 139 and 147. These paragraphs claim Dr. Howard "affirmed by superior qualifications" over Dr. Huettner, or confirmed Plaintiff was hired over Dr. Huettner "based on superior qualifications," citing pages 17:10 - 18:4. Once again, these pages do not contain the quoted testimony, and no such testimony is found anywhere in Dr. Howard's deposition. Rather, it appears to be entirely fabricated.*

Response: Dr. Howard's deposition testimony comports with paragraphs 139 and deposition.

*Paragraph 143. This paragraph claims Dr. Howard testified: "Having an on-site physicist is essential to the integrity of our accreditation processes and day-to-day operations. It was never intended to be a remote-only role," citing page 34:4-7. Again, there is no such testimony in Dr. Howard's deposition, and it appears Plaintiff has completely manufactured this statement.*

Response: Plaintiff acknowledges a citation error and clarifies that Dr. Howard's relevant testimony appears on page 18 of her deposition, where she discusses the operational need for an on-site physicist. This aligns with Paragraphs

143 & 144 of the Declaration and the evidentiary record and supports the assertion that the role was never intended to be remote-only. Additional support is found in: Dr. Duszak's deposition (pp. 75, 76, 94, 95), addressing operational expectations of MRI physicist roles; Dr. Morris's deposition (p. 52), confirming accreditation duties tied to on-site presence. ACR MRI Quality Control Manual (p. 10) affirms the institutional requirement for on-site physicist oversight and substantiates Plaintiff's declaration. ACR - MRI Quality Control Manual, (p. 10) Standards state: "A qualified medical physicist or MRI scientist onsite (or one who is readily available) should administer each facility's QC program." — ACR QC Manual, p. 10. This national standard reinforces the institutional expectation of on-site physicist presence and directly supports the factual basis of Plaintiff's declaration.

*Paragraph 144. This paragraph claims Dr. Howard's testimony "affirmed the essential nature of my clinical role," citing page 34:4-7. Once more, this statement is not found at the cited pages, nor does it exist on any other pages of Dr. Howard's deposition, and is yet another example of Plaintiff's complete fabrication of testimony.*

Response: Dr. Howard mentions the Plaintiff's clinical role at pages 19 and 24 of her deposition.

Conclusion

The Plaintiff respectfully requests that the Court not strike his declaration for the reasons cited herein and that the Court accept the allegations contained therein in their entirety.

RESPECTFULLY submitted this the 26th day of August, 2025.

**MOHAN PAULIAH, PH.D,
PLAINTIFF**

*/s/* Samuel L. Begley
**SAMUEL L. BEGLEY, ESQ.**
Miss. Bar No. 2315
BEGLEY LAW FIRM, PLLC
P. O. Box 287
Jackson, MS 39205
Tel: 601-969-5545
begleylaw@gmail.com
*Attorney for the Plaintiff*