**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MOHAN PAULIAH,**

       *Plaintiff,*

v.

               CAUSE NO. 3:23-CV-3113-CWR-ASH

**UNIVERSITY OF MISSISSIPPI**
**MEDICAL CENTER,** *et al.,*

       *Defendants.*

## ORDER

Defendants moved for Summary Judgment. Docket No. 121. In opposing this motion, Plaintiff filed a lengthy declaration. Docket No. 124-1. Defendants moved to strike this declaration. Docket No. 128. Because Plaintiff's declaration contains multiple fabrications and misrepresentations of the record, the Court grants the motion to strike. Because Plaintiff has failed to rebut the legitimate non-discriminatory reasons Defendants provided for termination, and in light of the qualified immunity defense raised by Defendants, the Court grants Defendants' motion for summary judgment on all remaining federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim; however, the Court will retain jurisdiction for the limited purpose of holding a hearing under Rule 56(h) to determine what sanctions, if any, should be imposed.

## Background

This is an employment discrimination action. In December 2021, the University of Mississippi Medical Center ("UMMC") hired Plaintiff, Dr. Pauliah, as an MRI Physicist in the Department of Radiology with a tenured-track appointment at the rank of Assistant

1

Professor. During his first year, UMMC issued a letter notifying Plaintiff that his position would not be renewed, ultimately resulting in his termination. UMMC argues that concerns about Plaintiff's job performance and difficulties with coworkers led UMMC to this decision, while Plaintiff asserts that this is merely pretext for discrimination. Plaintiff asserts that the actual reason motivating his termination was discriminatory animus toward him on account of his race, color, national origin, and age.

Plaintiff argues that his supervisor at UMMC, Dr. Richard Duszak, was motivated by discriminatory animus, made discriminatory remarks about Plaintiff's nationality, and was involved in the decision to terminate Plaintiff and replace him with a younger white man. At first blush, Plaintiff's claims paint a shocking picture of workplace discrimination; however, upon review, the record before the Court completely undermines Plaintiff's allegations.

## Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir.

2

2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

At the summary judgment stage, "'self-serving' affidavits and depositions may create fact issues even if not supported by the rest of the record." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Self-serving affidavits and declarations still must "comport with the standard requirements of Federal Rule of Civil Procedure 56." *Id.* at 161. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Where a party submits a declaration "in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h).

## Discussion

As an initial matter, to the extent Plaintiff brings Title VII claims against any of the individual Defendants, those claims fail as a matter of law. *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities.") (citation omitted). Those claims are dismissed.

The following claims remain: (1) three Title VII claims (race, color, and national origin) against UMMC; (2) age discrimination under the Age Discrimination in Employment Act, seeking injunctive relief from the individual defendants; (3) race discrimination against Richard Duszak in his individual capacity, under 42 U.S.C. § 1981; (4) race and nationality discrimination against Richard Duszak in his individual capacity, under 42 U.S.C. § 1983; and

3

(5) tortious interference with employment against Richard Duszak in his individual capacity. Before analyzing the substance of those claims, the Court first resolves to what extent the Court will allow Plaintiff to rely upon his own declaration in support of his opposition to Defendants' motion for summary judgment.

### A.    Plaintiff's Declaration

Plaintiff filed a declaration in support of his opposition. Docket No. 124-1. His declaration is replete with misrepresentations of the record and, more alarmingly, outright fabricated quotations of sworn testimony. These misrepresentations and fabrications are not merely incidental. Plaintiff relies on them throughout his opposition to Defendants' motion.

For example, in his declaration, Plaintiff repeatedly claims that one of UMMC's employees, Dr. Howard, with whom Plaintiff worked, admitted that Plaintiff "did not receive adequate departmental support" so she "loaned [her] laptop so [Plaintiff] could complete the report." *Id.* at 14 and 25. Plaintiff provides a citation to Dr. Howard's deposition transcript, *id.* (citing Howard Dep. 33:5-34:3); however, the citation does not contain the quoted material. This is not a typo or simply an incorrect citation. A review of Dr. Howard's deposition transcript fails to show that she ever uttered these words. *See generally* Docket 124-5. Despite this, Plaintiff relies on this false quotation and fake citation in his opposition to summary judgment:

> Recognizing the institutional failure, Dr. Candace Howard offered her personal laptop to Plaintiff for completing the ACR MRI Annual Survey. She confirmed in deposition: "He did not receive adequate departmental support and I loaned my laptop so he could complete the report." — Howard Dep. 33:5–34:3

Docket No. 125 at 18.

4

Unfortunately, this is not an isolated example. In his declaration, Plaintiff presents

many fabricated quotations of sworn testimony, including:

> "'No accreditation failure was ever cited against Dr. Pauliah.' — Howard Dep.
> 27:1-3" Docket No. 124-1 at 14 and 26.[1]

> "In deposition, MR Medical Director Dr. Morris admitted under oath that he
> 'never reviewed' the weekly QC logs and failed to execute quarterly and
> annual supervisory reviews required by the ACR QC Manual [Morris Dep.
> 36:10–40:3]." *Id.* at 21 (brackets in original).

> "'Having an on-site physicist is essential to the integrity of our accreditation
> processes and day-to-day operations. It was never intended to be a remote-
> only role.' — Howard Dep. 34:4–7." *Id.* at 28.

None of these citations contain the quoted material, and review of the transcripts reveal that

none of the purported quotations were ever uttered during testimony.[2]

In addition to these fabricated quotations, Plaintiff misrepresents other portions of the

record. His misrepresentations include:

> "This position is contradicted by Dr. Howard's deposition, which affirmed my
> superior qualifications and intentional selection over Mr. Huettner (Howard
> Dep. 17:10–18:4)." *Id.* at 22-23.

> "Multiple colleagues affirmed the essential nature of my clinical role, including
> testimony from Vice Chair Dr. Candace Howard [Howard Dep. 34:4–7]" *Id.* at
> 29 (brackets in original).

---

[1] Plaintiff relies on this fabrication in his opposition to summary judgment. Docket No. 125 at 16-17.

[2] When confronted with these fabricated quotations in Defendant's Motion to Strike, Plaintiff failed to take
any responsibility. *See, e.g.*, Docket No. 131 at 8 (explaining the false quotation, cited as Howard Dep. 33:5–
34:3, by stating "Dr. Howard's testimony discusses the Plaintiff not receiving a laptop" and entirely
avoiding the portion of the false quotation purporting that Plaintiff "did not receive adequate departmental
support"); *id.* (claiming, that "Plaintiff's affidavit comports with Dr. Howard's page 26 deposition
testimony" despite the fabricated quotation— "No accreditation failure was ever cited against Dr. Pauliah"
—appearing nowhere in Dr. Howard's testimony).

"Dr. Edward[3] Howard confirmed that Plaintiff had been selected over Dr. Huettner during the original 2021 hiring process based on superior qualifications and a willingness to work on-site [Howard Dep. 17:10–18:4]." *Id.* at 33 (footnote added) (brackets in original).

None of the cited portions of those transcripts comport with the descriptions Plaintiff offers. Plaintiff misleads the Court.

The Court finds that Plaintiff's declaration was submitted in bad faith. At a minimum, Plaintiff and his counsel failed to verify that Plaintiff's representations of the record were accurate; at worst, they knowingly filed false statements with the Court. The Court declines to comb through the record to determine which of the statements contained in Plaintiff's declaration are accurate, when so many are blatant misrepresentations and fabrications. Therefore, the Court strikes Plaintiff's declaration in its entirety pursuant to Rule 56(h). *See, e.g.*, *Olivier v. Exxon Mobil Corp.*, No. 18-568-SDD-EWD, 2022 WL 3574354, at *3 (M.D. La. Apr. 12, 2022) ("At the very least, Defendant acted so carelessly in filing this document with the Court without having previously vetted the Affidavit or ensured [affiant]'s actual knowledge of his attestations, that the Court finds the Affidavit was filed in bad faith and should be stricken in its entirety pursuant to Rule 56(h).").

### B.    Summary Judgment

The Court now turns to the substance of Plaintiff's remaining claims, challenged by Defendants' motion for summary judgment.

---

[3] The only Dr. Howard whose deposition transcript Plaintiff submitted to the Court is Dr. Candace Howard. Docket 124-5. The Court presumes this and other citations to Dr. Howard's transcript were meant to refer to the deposition of Dr. Candace Howard.

1.    **Title VII Claims**

Plaintiff brings claims of discrimination based on his race, color, and national origin, under Title VII. Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "When the plaintiff cannot adduce direct evidence of intentional discrimination, courts apply the well-established framework set forth in *McDonnell Douglas Corp. v. Green*." *Chen v. Ochsner Clinic Found.*, 630 Fed. App'x 218, 223 (5th Cir. 2015) (citing 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of discrimination. 411 U.S. at 802. To meet that initial burden, Plaintiff must demonstrate that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (quotation marks and citation omitted). Under this familiar burden-shifting framework, "once the plaintiff presents a *prima facie* case, the burden shifts to the defendant-employer to proffer a legitimate rationale for the underlying employment action." *Id.* at 317-18 (quotation marks and citation omitted). "If a legitimate reason is proffered, the burden returns to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext . . ." *Id.* at 318 (quotation marks and citation omitted). "Showing pretext requires a plaintiff to 'produce

7

substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" *Id.* (quoting *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003)).

Assuming Plaintiff satisfied his initial burden to make a *prima facie* case, which the parties dispute, Plaintiff has failed to rebut the legitimate non-discriminatory reasons proffered by Defendants. Defendants explained that "Plaintiff's employment was not renewed because of his poor job performance and attitude toward fellow employees." Docket No. 122 at 15. Plaintiff must rebut each of these proffered non-discriminatory reasons. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) ("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates."). He has not done so.

Plaintiff responds to the claim that his non-renewal was based on poor job performance by claiming that instead, his non-renewal was part of a departmental reorganization. The only citation to the record that Plaintiff provides—outside his stricken declaration—points to testimony from Dr. Duszak stating that all three Ph.D. research scientist positions, including the one held by Plaintiff, were eliminated. *See Skinner v. Hinds Cnty., Miss.*, No. 3:10-CV-358-DPJ-FKB, 2014 WL 317872, at *3 (S.D. Miss. Jan. 29, 2014) (noting factual assertions must be supported with cites to parts of the record under Rule 56(c)). Alone, this amounts to Plaintiff merely substituting another non-discriminatory reason for the one proffered by UMMC, and it does not make it more likely than not that the reason offered by Defendants is pretext for discrimination.

Plaintiff responds to the claim that his non-renewal was based on difficulties working with fellow employees by pointing to the lack of deposition testimony from coworkers on the subject and the absence of written documentation of these interpersonal difficulties. With

respect to the testimony of coworkers, that lack of testimony cannot establish that no such

conflicts existed. As to the absence of documentation, Plaintiff altogether ignores the

testimony of Drs. Duszak and Morris and several emails that reveal difficulties between

Plaintiff and other employees.[4] Plaintiff then tries to rebut this non-discriminatory reason by

identifying testimony from Dr. Howard, indicating that no one complained to her about

Plaintiff and noting that Dr. Howard never witnessed Plaintiff being dismissive or

condescending. Here too, Plaintiff paints an incomplete picture. Dr. Howard's testimony

indicates that she worked with Plaintiff for only the research portion of his duties, and

Plaintiff did not report to Dr. Howard with respect to the performance of his other

responsibilities.[5] Her testimony further indicates, that even though she did not witness

"dismissive and condescending" behavior, she was aware that Dr. Pauliah had been accused

of that type of behavior.[6] That Dr. Howard did not witness Plaintiff exhibit poor interpersonal

skills within her department does not, on its own, outweigh the testimony and

---

[4] *E.g.*, Docket No. 121-19 at 4 (Duszak Dep. Tr. 18:16-19:1) ("Q. Are you aware of any maladaptive communication behavior on the part of Dr. Pauliah? A. As I would interpret maladaptive communication, yes. . . . I believe that – and witnessed communication that was divisive and disruptive, ineffective on multiple occasions."); Docket No. 124-6 at 4 (Morris Dep. Tr. 8:5-9) ("Q. Do you have any specific recollection of Dr. Pauliah having an interpersonal difficulty with any coworkers? A. Yeah. He was – there was conflict with – with some of the people he worked with, yes."); *id.* (Morris Dep. Tr. 8:10-9:14) (discussing that Dr. Pauliah had a conflict with the chief MRI technologist including difficulty working on accreditations, and Dr. Pauliah made demands of and acted disrespectfully toward one of the department's coordinators); Docket No. 121-10 at 1 (email from Dr. Duszak to Dr. Pauliah, thanking him for meeting to "help mend relationships within the department"); Docket No. 121-13 at 2 (email from Dr. Duszak to Plaintiff mentioning the "disruption you created in your interactions with staff" and "the unprecedented resources we allocated to navigating working relationships for you").

[5] Docket No. 124-5 at 5 (Howard Dep. Tr. 10:7-8) ("I know [Plaintiff's] scope of practice in regards to me. So our relationship dealt with research."); *id.* (Howard Dep. Tr. 12:17-13:20) (detailing Dr. Howard's lack of knowledge with respect to Dr. Pauliah's performance or duties outside of research); *id.* at 8 (Howard Dep. Tr. 24:6-7) ("[Plaintiff] had clinical roles that he didn't report to me about . . .").

[6] Docket No. 124-5 at 6 (Howard Dep. Tr. 14:16-18) ("I personally never saw [Plaintiff] being dismissive and condescending. I am aware of people saying that. I never saw it.").

contemporaneous emails from Dr. Duszak, another of Plaintiff's supervisors, indicating that Plaintiff experienced difficulties working with fellow employees.

To bolster his claim that Defendants' non-discriminatory reasons are mere pretext, Plaintiff alleges that Dr. Duszak made racist remarks; however, Plaintiff's testimony undermines his claim that these remarks were indeed motivated by discriminatory animus. "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or, as is the case here, it may be used as additional evidence of discrimination." *Laxton*, 333 F.3d at 583 (citation omitted). Here, Plaintiff alleges that Dr. Duszak made the following comments to Plaintiff: "I will Google a job for you" and "How about sending you back to India." Docket No. 125 at 11. The first comment does not appear discriminatory on its face, and Plaintiff has never offered any explanation for how it was intended or received as discriminatory.[7] The second statement indeed appears shocking; however, Plaintiff testified that this statement was made in the context of Plaintiff expressing to Dr. Duszak that Plaintiff had not been to India to visit family in many years due to the demands of his work:

> Q. So you told him about your father's passing?
> A. Yeah, passing.
> Q. And you told him that that was the last time you were in India?
> A. Yeah; yeah.
> Q. So you're telling Dr. Duszak about your father passing, and that was the last time that you were in India. What next?
> A. So this is the conversation, like, I'm working hard here, I'm doing much more greater things, innovative things, I've not gone back to India. This is the kind of –
> Q. Because you're working hard here?
> A. Yeah. So if I have to go to India, I would have to take two months there, because my family is there, eight-member family. And if I don't visit my brother and sister, they're going to complain, so I need to have at least one month, one-and-a-half months.

---

[7] *E.g.*, Docket No. 121-1 at 23 (Pauliah Dep. Tr. 242:6-243:3) (refusing to provide explanation or further context that may aid in understanding discriminatory intent or meaning contained in that comment).

      Q.     Okay.
      A.     So that's –
      Q.     And then he said what?
      A.     We are talking. And finally when he says this, "How about sending you
              back to India?"

Docket No. 121-1 at 22 (Pauliah Dep. Tr. 159:17-160:17). The context of this conversation does not support Plaintiff's assertion that Dr. Duszak was motivated by discriminatory animus when he made that statement.

Plaintiff has failed to rebut either of the legitimate non-discriminatory reasons proffered by Defendants. His failure to satisfy the burden-shifting framework requires the entry of judgment for Defendants on these claims.

      **2.**      **ADEA Claim**

Plaintiff seeks injunctive relief, including reinstatement of employment, as a remedy for the alleged age discrimination he endured. When analyzing claims of age discrimination under the ADEA that rely upon indirect evidence, courts in this Circuit apply the same burden-shifting framework discussed above. *See, e.g.*, *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019) (applying the burden-shifting framework from *McDonnell Douglas* when confronting indirect evidence supporting a claim under the ADEA). Assuming Plaintiff satisfied his initial burden to make a *prima facie* case which, here again, the parties dispute, Plaintiff has failed to rebut the legitimate non-discriminatory reasons proffered by Defendants. Defendants identified the same two non-discriminatory reasons for Plaintiff's termination. Docket No. 122 at 23 ("Plaintiff's employment was not renewed because of his poor job performance and attitude toward fellow employees."). As discussed *supra*, Plaintiff failed to rebut either of those reasons. His

failure to satisfy the burden-shifting framework requires the entry of judgment for Defendants on this claim as well.

### 3.      § 1981 and § 1983 Claims

Plaintiff also brought a claim of race discrimination against Dr. Duszak in his individual capacity, under 42 U.S.C. § 1981; and claims of race and nationality discrimination against Dr. Duszak in his individual capacity, under 42 U.S.C. § 1983. Dr. Duszak invoked qualified immunity. Docket No. 122 at 17-20. Because Dr. Duszak properly invoked qualified immunity, the burden shifted to Plaintiff to demonstrate its inapplicability. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."). Plaintiff made no attempt to do so. *See generally* Docket No. 125. For this reason, summary judgment is appropriate on Plaintiff's remaining federal causes of action.

### 4.      Tortious Interference with Employment

Lastly, Plaintiff brought a claim of tortious interference with employment against Dr. Duszak in his individual capacity, under Mississippi law. With all of Plaintiff's federal causes of action now resolved, the Court finds it appropriate to decline supplemental jurisdiction over Dr. Pauliah's state law claim. *See Hill v. Hinds Cnty, Miss.*, No. 3:12-CV-880-CWR-FKB, 2015 WL 1014305 (S.D. Miss. Mar. 9, 2015) (declining to exercise supplemental jurisdiction after entering summary judgment on all federal claims); *Senu-Oke v. Jackson State Univ.*, 521 F. Supp. 2d 551 (S.D. Miss. 2007) (declining supplemental jurisdiction upon determining defendants were entitled to qualified immunity and granting summary judgment on all federal claims). *See also Collins v. Jackson Pub. Sch. Dist.*, 58 F. Supp. 3d 705 (S.D. Miss. 2014) (declining to exercise supplemental jurisdiction after dismissing all federal claims). In

addition to his claim for tortious interference with employment, to the extent Plaintiff believes that he can seek any relief under the provisions of the Mississippi Constitution or the Mississippi Code, *see, e.g.*, Docket No. 25, at 12-13, he can present them to the appropriate State Court.

### C.    56(h) Hearing

The Court is concerned with the process that Plaintiff and his counsel may have used, when submitting the false statements and misrepresentations contained in Plaintiff's signed declaration. "Rule 56(h) provides the court with the power to impose appropriate sanctions 'if satisfied that an affidavit or declaration under Rule 56(h) is submitted in bad faith or solely for delay.'" *Denson v. BeavEx Inc.*, No. H–13–1493, 2014 WL 3543718, at *11 (S.D. Tex. July 17, 2014) (quoting Fed. R. Civ. P. 56(h)) (citation modified). Rule 56(h) specifically provides that where a party submits a declaration "in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h). The Court will set a hearing in the interest of determining what process Plaintiff and his counsel used to draft, review, and submit the declaration containing fabrications and misrepresentations. The Court will retain jurisdiction for the purpose of determining what sanctions, if any, may be imposed.

Defendants' remaining motions in *limine*, Docket Nos. 134-140, are denied as moot.

**SO ORDERED**, this the 23rd day of October 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE