UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

DEC − 5 2025

ARTHUR JOHNSTON.
BY_____ DEPUTY

MOHAN PAULIAH, Ph.D.                                    **PLAINTIFF**

VS.                               **CIVIL ACTION NO. 3:23-cv-03113-CWR-ASH**

UNIVERSITY OF MISSISSIPPI MEDICAL CENTER,

ET AL.,                                               **DEFENDANTS**


**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' FEE REQUEST AND**

**SUBMISSION FOR RECONSIDERATION BASED ON FACTUAL ERROR, LEGAL**

**ERROR, AND MANIFEST INJUSTICE IN RESPONSE TO THE COURT'S**

**NOVEMBER 4, 2025, ORDER**


**Purpose:** To provide a high-level, respectful roadmap for the Court, establishing extraordinary

circumstances and Plaintiff's good faith, while reframing the narrative from resisting

punishment to reclaiming judicial fairness.


**INTRODUCTION: RESTORING FAIRNESS TO A COMPROMISED PROCESS**


**Plaintiff, Dr. Mohan Pauliah, pro se, respectfully submits this Omnibus Opposition to**

**Defendants' Request for Fees and addresses the Court's pending Rule 56(h) sanctions**

**inquiry, with profound respect for this Honorable Court's role as the guardian of**

**procedural integrity and substantive justice.** In the interest of justice and to prevent manifest

injustice, Plaintiff also respectfully submits that the Court's October 23, 2025, Summary

Judgment Order (Dkt. 141) contains reversible legal and factual errors warranting reconsideration.

This filing constitutes Plaintiff's Omnibus Opposition to Defendants' Request for Attorneys' Fees, which was submitted following this Court's November 4, 2025, text order scheduling a Rule 56(h) sanctions hearing for December 18, 2025. Defendants' demand for more than $15,000 in fee. Defendants seek more than $15,000 in fees based on 65.6 hours of duplicative, inflated billing. This request, built on procedural deficiencies not attributable to Plaintiff, represents an effort to convert a procedural default into an inequitable advantage. The default was directly caused by Defendants' suppression of evidence and the failures of Plaintiff's court-recognized counsel. To grant sanctions under these conditions would invert the equitable purpose of Rule 56(h), punishing a litigant who relied in good faith on counsel while rewarding tactics that undermined the Court's truth-seeking function.

**This case presents a rare and compelling confluence of procedural catastrophes:**

1. A constructive denial of counsel due to undisclosed conflicts, abandonment, and withdrawal;

2. The suppression of material, exculpatory evidence by the opposing party; and

3. A judgment rendered upon a record incomplete and distorted by these defects.

Against this backdrop, Defendants' fee request submitted pursuant to Rule 56(h) seeking over $15,000 in attorneys' fees - cannot be viewed as a legitimate request for cost-shifting measure. It is instead an effort to capitalize on procedural deficiencies not attributable to Plaintiff. This is the culmination of a coordinated effort to exploit a procedural deficiency, into an inequitable advantage, a default directly caused by

- Defendants' own suppression of evidence and

- the failures of Plaintiff's court-recognized counsel - conduct not attributable to Plaintiff.

To grant sanctions under these conditions would invert the equitable purpose of Rule 56(h), punishing a litigant who relied in good faith on counsel while rewarding tactics that undermined the truth-seeking function of the Court. This is rewarding deception while punishing diligence and reliance on counsel, it would erode public trust in this institution's unwavering commitment to fairness. Plaintiff does not stand before the Court merely to "resist punishment."

Plaintiff seeks to restore the judicial fairness absent from these proceedings, respectfully requesting that the Court exercise its inherent authority to correct proceedings in which the record was compromised by attorney abandonment and the suppression of material evidence and misrepresentation by the opposing party which in substance constitutes fraud on the court. Fidelity to judicial integrity and the preservation of goodwill compel a single just result: the denial of sanctions, the vacatur of the compromised summary judgment, and the restoration of a merits-based adjudication upon a full and accurate record. The following interdependent pillars demonstrate why sanctions against Plaintiff are legally untenable, equitably unjust, and why vacatur of the judgment is necessary to preserve fairness and essential to restore justice.

*Justice cannot reward deception while punishing diligence; integrity demands denial of Defendants' fee request.*

### SIX INTERDEPENDENT PILLARS: A ROADMAP FOR JUDICIAL NAVIGATION

Plaintiff's position is anchored in six decisive pillars, which together establish that the request for sanctions is without legal foundation and that vacatur of the judgment is essential to remedy a profound injustice.

### Pillar 1: Attorney Abandonment & Misconduct

### Judicial Guidance & Core Argument

Honorable Magistrate Judge Harris's December 3, 2025, order (Dkt. 159) directs that the factual dispute over responsibility for Plaintiff's declaration be resolved in this Court's Rule

56(h) proceeding. The order confirms that Plaintiff "will be able to present whatever factual arguments he wishes to Judge Reeves at the forthcoming hearing." Id. at 2. Accordingly, Plaintiff presents the conclusive evidence: any defect in the declaration is attributable solely to former counsel Samuel Begley, who admitted in writing his responsibility for its preparation and filing corrective errata/actions [Dkt. 144, 147, 154, 154.1, 155, and 155.1, 159; Exhibit B and O]. The declaration itself was visibly watermarked with an incomplete draft marked **'Draft Two'** and was never intended for submission without final review and finalization, yet **Mr. Begley filed it in that incomplete state, thereby committing the misconduct that the Court has attributed to Plaintiff.** Plaintiff relied on Mr. Begley's professional judgment and signed the declaration only because counsel directed him to do so within a restricted timeframe, leaving no meaningful opportunity for independent verification or revision. **[Exhibit O – Timeline of Events on July 28, 2025 (Submission of Plaintiff's Declaration) and Text Messages Between Plaintiff and Counsel Samuel Begley on the Night of July 28, 2025]** Under well-settled principles, sanctions for attorney misconduct must be directed at the responsible lawyer, not the client who relied in good faith (*Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962)). The Fifth Circuit has likewise cautioned that sanctions must be proportionate and carefully tailored to culpability, emphasizing that courts must avoid punishing parties for their attorney's misconduct (*Topalian v. Ehrman*, 3 F.3d 931, 936–37 (5th Cir. 1993)). Any procedural flaw is the direct result of counsel's admitted negligence, undisclosed conflict, and constructive abandonment. Judicial goodwill requires that a litigant not be unfairly penalized for the serious professional failures of the officer of the court upon whom he was forced to rely.

**Key Legal Anchors**

- *Maples v. Thomas*, 565 U.S. 266, 283 (2012) – Constructive abandonment by counsel constitutes structural error; a client cannot be faulted for counsel's dereliction.

- *Pryor v. U.S. Postal Serv.,* 769 F.2d 281, 288 (5th Cir. 1985) – The Fifth Circuit held that a client should not be penalized for attorney abandonment or misconduct.

- *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n,* 121 F.R.D. 284, 287–88 (N.D. Tex. 1988) (en banc) – Establishes professional responsibility standards, emphasizing that courts must protect litigants from counsel's ethical failures.

- *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 879 (5th Cir. 1988) (en banc) – The Fifth Circuit reversed sanctions, stressing that they must be tailored to the responsible party and not unfairly imposed on clients acting in good faith.

- *Link v. Wabash R. Co.,* 370 U.S. 626, 633–34 (1962) – Sanctions for attorney misconduct must be directed at the responsible lawyer, not the client who relied in good faith.

- *Topalian v. Ehrman,* 3 F.3d 931, 936–37 (5th Cir. 1993) – The Fifth Circuit cautioned that sanctions must be proportionate and carefully tailored to culpability, avoiding punishment of parties for their attorney's misconduct.

**THE PATH TO RESTORING JUDICIAL INTEGRITY**

Deny sanctions against Plaintiff; shift sanction inquiry to Mr. Begley; excuse procedural defaults. *Sanctions must target counsel's misconduct, not punish a client's reliance; fairness requires denial.*

**Pillar 2: Suppression of Evidence and Misrepresentation by Defendants (amounting to Fraud upon the Court)**

**Core Argument & Judicial Goodwill Framing**

Defendants' fee request rests upon Defendants' own misconduct, including falsified EEOC position statements, amounting to fraud upon the Court [Exhibit D: Suppression of EEOC Filing and Audio Recording of Termination Meeting (May 30, 2023)], misrepresented

accreditation timelines [Exhibit E: Documentary Record Of ACR Accreditation Timeline And Misrepresentation] and suppression of exculpatory evidence [Exhibit C, Deposition Highlights Of Dr. Candace M. Howard M.D., Ph.D.]. A party cannot seek equity with unclean hands. Judicial goodwill requires denying fee-shifting to a party whose fraud subverted the Court's truth-seeking function. To award fees to such a party would not only invert justice, Incentivizing misconduct while penalizing good faith, but would also bring the administration of justice into disrepute and undermine the integrity of this institution.

The Court's summary judgment ruling relied on a factual premise that the full record, including newly presented and previously unavailable evidence, establishes that a key factual premise underlying the Court's summary judgement is not supported. Defendants secured judgment by presenting a justification for termination - a "lack of interpersonal skills" - that is directly contradicted by the sworn testimony of their own manager, Dr. Candace Howard. The suppression was outcome-determinative because the Court's summary judgment rationale rested on the very claim Dr. Howard refuted. Without her testimony, judgment was entered on a distorted record. The Court's summary judgment ruling rested on Defendants' asserted rationale of "lack of interpersonal skills." By suppressing Dr. Howard's sworn testimony - which directly refutes that rationale - Defendants deprived the Court of material evidence essential to its analysis. This omission ensured that summary judgment was granted on a distorted record. The suppression was not harmless; it struck at the very foundation of the Court's reasoning and rendered the judgment outcome-determinative.

This testimony was material, exculpatory, and unavailable to the Court at the time of its ruling due to the confluence of attorney failure and Defendants' litigation strategy. No HR incident report, peer feedback, technologist report, or QC documentation supports Defendants' claim. The absence of contemporaneous records is powerful evidence of pretext.

**Interpersonal Skills Allegations Are Unsupported and Contradicted by the Record**

Defendants' claim that Plaintiff was terminated due to "interpersonal difficulties" or "maladaptive communication behaviors" is wholly unsupported. No HR incident report, peer feedback, technologist report, or quality-control documentation exists to substantiate such allegations. There was no HR investigation, no disciplinary action, and no contemporaneous record of interpersonal issues.

On the contrary, contemporaneous emails and communications demonstrate consistent praise and collegiality, below are the some of the email evidence [Exhibit M]:

- **Dr. Beverly Gwen Windham (UMMC, Nov. 4, 2022):** *"All of us appreciate your skills and expertise; I hope we can continue working together!"*

- **Dr. Prashanthi Vemuri (Mayo Clinic, Nov. 4, 2022):** *"Thanks for helping with the other protocols and making the ASL work for all the studies. We are in urgent need of certifying the scanner for MarkVCID and the team is under a lot of pressure."*

- **Dr. Prashanthi Vemuri (Mayo Clinic, Nov. 11, 2022):** *"Welcome back. Here is a XA version of the entire protocol that Karl shared from UKy."*

- **Dr. Prashanthi Vemuri (Mayo Clinic, Nov. 8, 2022):** *"Absolutely – I sent them an email about it again now ..."*

- **Associate Vice Chancellor Dr. Joey Granger (UMMC, April 2023):** *"I need good people like you and great skills like you to work here at UMMC."*

- **Cody, MRI Manager (UMMC, 2022):** Shared personal hunting videos and offered to train Plaintiff in turkey hunting, reflecting collegial rapport.

These contemporaneous communications confirm that **Plaintiff was valued by peers and leadership, both internally and nationally**. The absence of any HR investigation or documentation, combined with positive evidence of collegiality, demonstrates that Defendants' allegations were manufactured post hoc for litigation purposes. Courts have consistently held

that unsupported allegations of interpersonal deficiencies, without corroborating documentation, are insufficient to justify adverse employment actions. See *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000); *Laxton v. Gap Inc.*, 333 F.3d 572, 580 (5th Cir. 2003).

**Fairness requires rejection of Defendants fabricated rationale; equity compels denial of their fee request.**

Defendants' asserted rationale is further undermined by the complete absence of any Human Resources incident report or investigation. No peer feedback, technologist report, or quality-control documentation supports the claim of "interpersonal deficiencies." In discrimination cases, the absence of contemporaneous HR records or corroborating documentation is powerful evidence of pretext. See *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) (comparator evidence is central to proving discrimination); *Laxton v. Gap Inc.*, 333 F.3d 572, 580 (5th Cir. 2003) (pretext may be shown where the employer's stated reason is unsupported by the record). Here, the lack of any institutional record, combined with the suppression of Dr. Howard's sworn testimony, confirms that Defendants' justification was manufactured for litigation rather than grounded in fact. This distortion directly undermined the Court's summary judgment rationale and ensured judgment was entered on an incomplete record.

The judgment is void because it was obtained through fraud upon the court. This "fraud" is not mere misconduct; it is an "unconscionable plan designed to improperly influence the court," *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978), and "vitiates everything," *Hazel-Atlas Glass Co.,* 322 U.S. at 246. Defendants' scheme is twofold: (1) the suppression of exculpatory evidence, namely the testimony of Dr. Howard that eviscerates their pretextual rationale; and (2) the deliberate fabrication of a narrative of "personal fabrication" by Plaintiff in their motion to strike, as evidenced by their own billing entries. A party cannot profit from

a judgment procured by its own fraud. Judicial goodwill requires this Court to cleanse its records of this taint by vacating the judgment and denying the fee request of a party with unclean hands.

This Court's truth-seeking function is the cornerstone of its legitimacy. When a judgment is revealed to be based on a factual inaccuracy, judicial goodwill and the Court's own institutional integrity demand a corrective. Allowing a decision to stand on a known falsehood and then rewarding the party responsible with a fee award, would undermine public confidence in the entire judicial process. The Court has the power and duty to prevent such an outcome.

**Key Legal Anchors**

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* **322 U.S. 238, 246 (1944)** – Fraud on the court "vitiates everything" and requires vacatur of judgments obtained through deception.

- *Chambers v. NASCO, Inc.,* **501 U.S. 32, 45–46 (1991)** – Courts possess inherent power to sanction abuse of process and protect the integrity of judicial proceedings.

- *Aoude v. Mobil Oil Corp.,* **892 F.2d 1115, 1118 (1st Cir. 1989)** – Fraud on the court occurs when a party fabricates or suppresses evidence, striking at the heart of the judicial process.

- *Rozier v. Ford Motor Co.,* **573 F.2d 1332, 1338 (5th Cir. 1978)** – The Fifth Circuit recognizes suppression of material evidence as fraud on the court warranting relief under Rule 60(b)(3).

**THE PATH TO RESTORING JUDICIAL INTEGRITY**

Nullify Defendants' credibility; justify denying their sanctions request; vacate the judgment **obtained through misrepresentation and suppression of facts (amounting to fraud on the court);** restore adjudication on a complete and honest record. *A judgment built on suppressed testimony and absent HR records cannot stand; equity compels denial.*

**Pillar 3: Misapplication of the Legal Standard for Sanctions**

**Core Argument & Judicial Goodwill Framing**

Rule 56(h) requires a specific finding of client bad faith before sanctions may be imposed. The record contains no evidence that Plaintiff acted with intent to deceive. Any finding of "bad faith" was premised on an incomplete record, one that omitted counsel's sworn admissions of responsibility and the suppressed exculpatory evidence [Dkt.144, 147, 154, 154.1, 155 and 155.1, **Exhibit B and I**]. Judicial goodwill calls for correction of this preliminary finding upon a full and complete record. A modest course correction honors the rigorous standard for imposing sanctions on a party personally and ensures that punishment is directed only at the culpable actor.

The Court's Order striking Plaintiff's declaration in its entirety, rather than excising discrete portions, fails to apply binding Fifth Circuit precedent (*Lee v. Nat'l Life*). This was not a mere evidentiary ruling but a case-dispositive sanction that gutted Plaintiff's opposition. The ruling constitutes a manifest error of law, requires a surgical approach, and the failure to apply it was outcome-determinative.

This Court, like all courts, functions most effectively when it corrects its own legal errors. A modest course correction that aligns with *Lee v. National Life Assurance Co.,* 632 F.2d 524 (5th Cir. 1980) honors precedent and preserves the core principle that at summary judgment, evidence must be viewed in the light most favorable to the non-movant. Judicial goodwill is demonstrated by the Court's commitment to getting the law right, ensuring that cases are decided on their merits rather than procedural missteps.

**Key Legal Anchors**

- Fed. R. Civ. P. 56(h) – Sanctions may be imposed only upon a finding that an affidavit or declaration was submitted in bad faith or solely for delay.

10

- *Gipson v. Weatherford College, 2024 WL 3739095, at 2 (5th Cir. 2024)* – The Fifth Circuit reaffirmed that Rule 56(h) requires a specific finding of intentional misconduct or intent to deceive before sanctions can be imposed.

- *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 878–79 (5th Cir. 1988) (en banc) – Sanctions must be carefully tailored and directed at the responsible party; fairness requires that clients not be punished absent clear evidence of personal bad faith.

- *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980) – The Supreme Court cautioned that sanctions must be imposed with restraint and only upon clear evidence of misconduct, to preserve fairness and judicial integrity.

**THE PATH TO RESTORING JUDICIAL INTEGRITY**

Vacate the Court's "bad faith" finding as to Plaintiff; direct any sanction inquiry to counsel: find any sanctionable conduct was counsel's alone; reaffirm that sanctions require specific, evidence-based findings of intentional misconduct. *Without clear evidence of bad faith, sanctions collapse; integrity demands correction and denial.*


**Pillar 4: Unreasonable & Tainted Fee Request**

**Core Argument & Judicial Goodwill Framing**

Defendants' redacted billing records (submitted in camera) are replete with vague, duplicative, inflated and unreasonable entries. They seek reimbursement for routine litigation tasks, such as summary judgment research and page-limit motions - that are not "incurred as a result" of Plaintiff's declaration, as Rule 56(h) requires. **Judicial goodwill requires a line-by-line reasonableness analysis**. Awarding bloated and unrelated fees would misuse the Court's sanction power, distort the equitable purpose of fee-shifting, and waste public resources.

**Key Legal Anchors**

- Line-by-Line redacted Billing Chart [Exhibit. N, Evidence of Unreasonable Fees: Line-by-Line Objection to Billing] – Demonstrates duplication, vagueness, and unrelated tasks.

- *Haygood v. Morrison,* 116 F.4th 439, 447 (5th Cir. 2024) – The Fifth Circuit held that duplicative and excessive fees must be disallowed; Courts must ensure billing entries are tied directly to the sanctionable conduct.

- *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) – The Supreme Court established that fee awards must be reasonable and necessary, with courts excluding hours not reasonably expended.

- *Perkins v. Standard Oil Co.,* 399 U.S. 222, 223 (1970) – Reinforces that fee awards must be strictly limited to costs actually caused by the misconduct.

- *Fox v. Vice, 563 U.S.* 826, 836 (2011) – Clarifies that courts may award only those fees that would not have been incurred "but for" the sanctionable or frivolous conduct.

**Billing Analysis & Duplication:** Defendants' billing records reveal that four separate experienced attorneys – (5 individuals) -  expended a billing total of **65.6 hours** preparing a single motion to strike a single affidavit (which was marked as an incomplete draft marked 'Draft Two'), with overlapping research, and redundant drafting. Such duplication is unreasonable and must be disallowed. This time was spread across Amanda B. Robinson (~34.6 hrs), Malissa Wilson (~18.2 hrs), Honey L. Brown (~5.2 hrs), Damonta Morgan (2.4 hrs), and May Hebert (3.1 hrs). **The duplication is evident:** multiple attorneys billed for identical research on the basis for a motion to strike, while others repeatedly "continued drafting" or "finalized" the same motion. Wilson's block-billed 5.4-hour entry for reviewing 149 paragraphs in one sitting is facially excessive, and Robinson's overlapping research entries demonstrate redundancy. [Exhibit. N, Evidence of Unreasonable Fees: Line-by-Line Objection to Billing]

Although Defendants' billing records do not contain verbatim duplicate entries, they reveal extensive duplication of effort across multiple attorneys. Robinson and Morgan both billed for "research regarding basis for motion to strike" on consecutive days, while Wilson simultaneously billed for "continue drafting" the same motion. On August 8, Robinson billed for identifying misrepresentations, drafting the motion, and requesting fees, while Wilson billed for finalizing the reply and Hebert billed for citation review - all tied to the same filing. This pattern of parallel billing demonstrates redundancy and inflation, not necessity.

Under *Hensley* and *Saizan*, courts must exclude "excessive, redundant, or otherwise unnecessary" hours. The 65.6 hours claimed here are not the product of careful billing judgment but of duplicative attorney overlaps and must be disallowed in their entirety. To award fees for such inflated work would invert the equitable purpose of Rule 56(h), rewarding inefficiency and punishing a pro se litigant abandoned by counsel.

**THE PATH TO RESTORING JUDICIAL INTEGRITY**

Strike all duplicative and unreasonable billing entries; deny Defendants' fee request in its entirety; reaffirm that sanctions must be narrowly tailored to actual costs caused by misconduct. *A fee request built on inflated, duplicative billing cannot stand; efficiency and fairness demand denial.*

As of date December 1, 2025, Mr. Begley has failed to produce the complete client file as ordered, leaving Plaintiff without the full set of pleadings and discovery necessary to prepare post-judgment motions and appellate filings [Dkt. 157 and 158]. He also failed to provide objections to Defendants' attorney fee entries despite assuring both the Court and Plaintiff that he would do so. A party's failure to comply with a clear and specific court order constitutes grounds for enforcement and contempt. *In re Wynn*, 889 F.2d 644, 646 (5th Cir. 1989). Attorneys are ethically obligated to surrender client files upon termination of representation. *Miss. R. Prof. Conduct 1.16(d)*. Because Begley's contempt deprived Plaintiff of the

opportunity to rebut Defendants' fee request and exposed him to sanctions for conduct Begley admitted was his responsibility, procedural extensions are inadequate. The only remedies consistent with fairness and Rule 56(h) are (1) relieving Plaintiff from sanctions and the scheduled hearing, or (2) striking Defendants' fee request in its entirety. Any lesser remedy would perpetuate manifest injustice and rewards misconduct.

**Pillar 5: Manifest Error of Law**

**Core Argument & Judicial Goodwill Framing**

The Court's order striking Plaintiff's declaration in its entirety, rather than excising discrete deficiencies, misapplied controlling Fifth Circuit precedent. In *Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir. 1980), the Fifth Circuit held that courts must disregard only those portions of an affidavit that are inadequate, not strike the entire declaration. Likewise, in *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234–35 (5th Cir. 2016), the Fifth Circuit emphasized that even self-serving testimony, if based on personal knowledge, must be considered. Judicial goodwill requires a modest course correction that honors binding precedent, preserves the Court's duty to view evidence in the light most favorable to the non-movant, and avoids punishing a good-faith litigant for curable defects.

**Key Legal Anchors**

- *Lee v. Nat'l Life Ins. Co.*, 632 F.2d 524, 529 (5th Cir. 1980) – The Fifth Circuit held that courts must "disregard only those portions of an affidavit that are inadequate," not strike the entire declaration.

- *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) – The Fifth Circuit confirmed that Rule 59(e) relief is appropriate to correct a manifest error of law.

14

- *Heinsohn v. Carabin & Shaw, P.C.,* 832 F.3d 224, 234–35 (5th Cir. 2016) – The Fifth Circuit emphasized that even self-serving testimony, if based on personal knowledge, must be considered and cannot be disregarded wholesale.

- *Cloud49, L.L.C. v. Rackspace Tech.,* No. 24-50385, 2025 WL [pin cite] (5th Cir. Mar. 11, 2025) (per curiam) (unpublished). Although unpublished, the Fifth Circuit reaffirmed that summary judgment requires consideration of admissible portions of the record, not blanket exclusion of an entire affidavit.

**THE PATH TO RESTORING JUDICIAL INTEGRITY**

Vacate the summary judgment; remand for consideration of admissible portions of the record; reaffirm the Court's duty to apply precedent faithfully and preserve fairness in adjudication. *Wholesale exclusion of evidence violates precedent; justice requires vacatur and denial of Defendants' request.*

**Pillar 6: Newly Discovered & Suppressed Evidence**

**Core Argument & Judicial Goodwill Framing**

The judgment rests on an incomplete **and distorted record**. Newly presented evidence conclusively establishes pretext and discrimination, evidence that was either suppressed by Defendants or unavailable to this Honorable Court due to attorney's failure. Judicial goodwill and equity demand that judgments be based on a complete factual record. A judgment resting on suppressed evidence and attorney misconduct cannot stand. Relief is warranted to restore the Court's truth-seeking function and ensure adjudication on the merits.

**Key Legal Anchors**

- Fed. R. Civ. P. 59(e) – Authorizes relief to correct manifest errors of law or fact and to consider newly discovered evidence.

- Fed. R. Civ. P. 60(b)(2)–(3) – Provides relief from judgment based on newly discovered evidence or fraud, misrepresentation, or misconduct by an opposing party.

- *In re GACP,* 60 F.4th 913, 923 (5th Cir. 2023) – The Fifth Circuit held that exceptional circumstances justify relief when newly discovered evidence would likely change the outcome.

- *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978) – Suppression of material evidence constitutes fraud on the court and warrants vacatur under Rule 60(b)(3).

- *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246 (1944) – Fraud on the court "vitiates everything" and compels vacatur of judgments obtained through deception.

**THE PATH TO RESTORING JUDICIAL INTEGRITY**

Vacate the judgment; supplement the record with Exhibits B - I; remand for a trial on the actual, complete merits; reaffirm the Court's role as guardian of fairness and truth. *A judgment resting on suppression and distortion cannot endure; truth and fairness require denial.*

**To impose sanctions** under these circumstances would be to invert justice, reward misconduct, and erode the very foundation of judicial goodwill. This Court cannot allow the sanctions request to proceed, nor let the judgment stand, without ratifying a compromised process by attorney abandonment, withdrawal and opposing party fraud. Plaintiff therefore stands before this Court not as a party resisting punishment, but as a litigant seeking to restore the judicial fairness that has, through no fault of his own, been absent from these proceedings.

**ARGUMENT**

**I. THE ABSENCE OF BAD FAITH NEGATES THE FOUNDATION FOR RULE 56(H) SANCTIONS [Dkt. 141, 144, 147, 154, 155].**

Rule 56(h) requires a finding that an affidavit was submitted in "bad faith or solely for delay." Fed. R. Civ. P. 56(h). The record is devoid of any clear evidence meeting this high standard. There is no evidence of Plaintiff's personal intent to deceive. Plaintiff, a pro se litigant at this critical juncture, relied in good faith on the legal advice and drafting of his former counsel in preparing the contested declaration.

The Fifth Circuit has consistently held that negligence or inadvertence does not constitute bad faith; sanctions are not appropriate where conduct is, at worst, negligent, and that bad faith requires a specific finding of intent. *In Browning v. Kramer,* 931 F.2d 340, 344 (5th Cir. 1991), the court explicitly held that "mere carelessness or negligence does not constitute bad faith" for the purpose of imposing sanctions. The Court reversed the sanctions award, emphasizing that the attorney's failure was negligent, not intentional.

This principle was reaffirmed in *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 875-76 (5th Cir. 1988) (en banc), a foundational case in the Fifth Circuit on sanctions. The court stated that sanctions are reserved for "serious abuse of the judicial process," not "minor infractions." The en banc court made it clear that a finding of bad faith requires "clear evidence" that the conduct was "motivated by improper purposes."

Furthermore, in *Childs v. State Farm Mutual Automobile Insurance Co.,* 29 F.3d 1018, 1024 (5th Cir. 1994), the Fifth Circuit vacated a sanctions order, holding that "inadvertence, negligence, or even gross negligence" does not equate to the "conscious doing of a wrong" required for the finding of bad faith.

The Court's own order [Dkt. 141] identifies a failure to verify and "blatant misrepresentations," but it does not and cannot make the requisite finding of Plaintiff's *personal, subjective intent to deceive.* At most, the record suggests negligence in the drafting and verification process, which falls squarely under *Browning* and *Childs.* To impose sanctions on a client for the potential missteps of his attorney, whom the Court has since allowed to withdraw - the

Plaintiff's counsel, would violate the fundamental principle that clients are not ordinarily held responsible for their counsel's acts and omissions. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993). Without a specific finding of Plaintiff's personal, subjective intent to deceive, the sanctions request must fail as a matter of law.

**Judicial goodwill requires correction:** without clear evidence of Plaintiff's subjective intent, sanctions cannot stand.

## II. DEFENDANTS' REQUEST FOR ATTORNEYS' FEES IS GROSSLY DISPROPORTIONATE AND UNREASONABLE.

Even if sanctions were warranted, which they are not, the fees requested by Defendants are excessive and unreasonable under the *Lodestar* method. The billing records reveal a clear lack of billing judgment, including block-billed hours, excessive intra-office conferences, and redundant legal research by multiple high-billing attorneys (four + 1 ) to strike a single declaration. For instance, the records show multiple attorneys separately researching the same basic legal standards for a motion to strike [Exhibit. N, Evidence of Unreasonable Fees: Line-by-Line Objection to Billing] The Fifth Circuit requires that fee awards be strictly scrutinized for reasonableness, and hours that are "excessive, redundant, or otherwise unnecessary" must be excluded. *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006). The sheer volume of hours expended [65.6 hours] to challenge a single declaration is facially unreasonable and reflects an effort to inflate the cost of defense, thereby weaponizing the sanctions process to punish Plaintiff further. Such a disproportionate award would be an abuse of discretion.

## DEFENDANTS' FEE REQUEST IS UNWARRANTED AND UNJUST

### A. Attorney Responsibility, Not Client Bad Faith

Defendants' fee request should be denied in its entirety. Newly discovered evidence establishes that any deficiency in Plaintiff's declaration resulted from attorney failure, not client bad faith.

Former counsel Samuel L. Begley expressly admitted: "It was my responsibility to ensure that your declaration was accurate before attaching it" and "I don't think you engaged in bad faith." (Exhibit. 154-1, Begley Email, Oct. 24, 2025, 8:28 AM; Exhibit. 155-1). Under fundamental agency principles, sanctions for counsel's errors should not be imposed on the client. See *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) (noting the "well-settled principle" that clients are generally bound by acts of their attorneys, but distinguishing sanctions for attorney misconduct).

**B. Financial Hardship Makes Sanctions Disproportionate**

Imposing monetary sanctions on Plaintiff would be grossly inequitable. Plaintiff testified under oath that he was rendered "unemployed," "uninsured," and unable to afford basic necessities: "I cannot afford. I am not earning. I'm not employed. I'm unemployed... We can't eat. We can't put food on the table." (Pauliah Dep. Tr. 319:5-11, Dkt. 140-1). Rule 56(h) sanctions are discretionary and must be proportionate. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Punishing an indigent pro se litigant for his former attorney's failure would constitute an abuse of discretion.

**C. FORMER COUNSEL'S TACTICAL ADMISSION CONFIRMS HIS SOLE RESPONSIBILITY AND THE ABSENCE OF CLIENT BAD FAITH**

Plaintiff's former counsel, Samuel L. Begley, has filed objections to Defendants' billing entries that unwittingly confirm the central thesis of this Opposition. In an attempt to limit his own financial exposure, Mr. Begley concedes that approximately 10.9 hours of Defendants' time were directly spent addressing the specific deposition misrepresentations in Plaintiff's declaration. He does not object to those fees, implicitly acknowledging they were "incurred as a result" of the declaration's deficiencies. See Begley Objections (Dec. 5, 2025).

This tactical admission is fatal to Defendants' request for sanctions against Plaintiff. First, by isolating these hours as the only ones proximately caused by the declaration's flaws, Mr. Begley's filing demonstrates that the remaining 54.7 hours claimed by Defendants are unreasonable and unrelated, warranting denial in their entirety under Hensley and Fox v. Vice. Second, and decisively, Mr. Begley's entire argument is predicated on the Court's finding of "bad faith." As established in Pillar 1, any finding of bad faith is attributable solely to Mr. Begley - the attorney who drafted, vetted, and filed the incomplete "Draft Two" declaration, and who has admitted in writing to this Court that ensuring its accuracy was his "responsibility." [144, 147, 154,154.1, 155 and 155.1; Exhibit B, Begley's Email Admission]. A sanction under Rule 56(h) requires a finding that the submitting party acted in bad faith. Fed. R. Civ. P. 56(h). Where, as here, the attorney admits he is the "submitting party" responsible for the document's content, any sanction must be directed at him. Link v. Wabash R. Co., 370 U.S. 626, 633–34 (1962). To accept Mr. Begley's narrow framing is to accept his premise that Plaintiff is the culpable "submitting party." This premise is false. The Court cannot sanction a client for an attorney's admitted unilateral failure. Therefore, Mr. Begley's submission, rather than aiding Defendants, provides a compelling reason to deny all fees: the only party who could logically be sanctioned for the conduct that generated these fees is Mr. Begley himself, and he has not been asked to pay them.

**D. Former Counsel's Continued Misconduct.** In a final act demonstrating his disregard for the Court's authority and his own ethical duties, former counsel Samuel Begley filed a document on December 5, 2025, falsely representing himself as **"Counsel for the Plaintiff"** despite having been formally withdrawn by court order. See Dkt. 147. This is not authorized by the Plaintiff, which attempts to narrow the scope of sanctionable conduct for his own benefit, is a nullity. It underscores the very abandonment and conflict of interest that infected these proceedings. It also serves as further evidence of the chaotic and unreliable representation

Plaintiff endured, reinforcing why no sanction can be imposed on the client for an attorney who continues to manipulate the record even after his removal.

## III. THE SUMMARY JUDGMENT ORDER CONTAINS MANIFEST LEGAL ERRORS WARRANTING RECONSIDERATION

**A. The Court's analysis rests on an interpretation of the employment contract that is inconsistent with its plain terms on Plaintiff's Employment Contract**

**1. Tenure-Track Appointment with "For Cause" Protection:** The Court's fundamental error was treating Plaintiff as an at-will employee. The governing document is the Employment Contract (Dkt. 121-4, p.1), which appoints Plaintiff as "Assistant Professor of Radiology" with "Special Provisions: **Tenure Track**" and permits termination only **"for cause."** This designation creates a constitutionally protected property interest in continued employment, consistent with *Perry v. Sindermann*, 408 U.S. 593, 601 (1972), and subsequent Fifth Circuit authority recognizing that tenure-track or "for cause" appointments confer a legitimate claim of entitlement (*Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003)). **By this Tenure Track appointment, the Plaintiff holds academic freedom during his employment, a core protection that underscores the constitutional property interest at stake.** Whether Defendants' proffered reasons for termination satisfy the contractual "for cause" standard is not a matter for summary judgment as a pure legal conclusion, but rather a quintessential **jury question**. The factfinder must determine whether the employer's stated rationale meets its own contractual obligations and whether it is pretextual. Viewing the evidence in the light most favorable to the non-movant, this issue should have been reserved for trial.

**2. The Recruitment Agreement is Distinct:** The separate "Recruitment Agreement" (Dkt. 121-4, pp. 2-5) governed only a $7,500 signing bonus and explicitly states: "nothing in this Recruitment Agreement shall be construed as a contract of employment." (Clause 6). By conflating these documents, the Court applied the wrong legal framework.

**3.** Genuine Issue on "Cause": Whether Defendants' proffered performance reasons satisfy the contractual "for cause" standard presents a quintessential fact question for a jury, precluding summary judgment. See *McDonnell Douglas Corp. v. Green, 411 U.S.* 792, 804-05 (1973) (pretext analysis requires examining whether employer's stated reason meets its own professed standards).

### B. The Court Did Not Address Direct Evidence Of Discrimination

The Court granted summary judgment without analyzing the 50-minute recording Plaintiff made of his meeting with Chris Morgan, which contains alleged discriminatory statements. (Referenced at Pauliah Dep. Tr. 250:12-251:6, Dkt. 140-1). This constitutes direct evidence of discriminatory animus. See *Laxton v. Gap Inc.,* 333 F.3d 572, 583 (5th Cir. 2003) ("[D]irect evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."). Failure to consider such evidence in the light most favorable to the non-movant violates basic summary judgment standards. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

### C. The Court Overlooked Uncontested Evidence of Damages

**1. Financial Ruin as Compensable Injury:** The Court's order disregarded Plaintiff's uncontested testimony of catastrophic financial harm. This testimony is admissible lay testimony under Federal Rule of Evidence 701, as it is "rationally based on the witness's perception." Plaintiff's firsthand account of becoming destitute is direct evidence of economic damage(s) flowing from the alleged wrongful termination. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265 (1989).

**2. Medical Treatment Evidence in Proper Context:** While records from foreign providers may present hearsay issues for diagnoses, the fact Plaintiff sought treatment from family abroad is admissible to show his good-faith effort to obtain care when rendered uninsured and indigent

by Defendants' actions. This establishes a "but for" causal chain: alleged discrimination $\rightarrow$ termination $\rightarrow$ loss of insurance $\rightarrow$ inability to afford U.S. care $\rightarrow$ reliance on family abroad.

**D. The Court's Rule 56(h) Sanction Was Disproportionate:**

The Court struck Plaintiff's entire 43-page declaration because specific portions contained miscitations. This was an abuse of discretion. The proper remedy was to disregard only the offending paragraphs, not all factual assertions. See Guzman v. Allstate Assurance Co., 18 F.4th 157, 161 (5th Cir. 2021) (noting self-serving affidavits can create fact issues if they comply with Rule 56). The sanction was especially disproportionate given the new evidence showing primary fault lay with Plaintiff's former counsel.

**E. THE COURT'S SUMMARY STRIKING OF THE ENTIRE DECLARATION, A CASE-DISPOSITIVE SANCTION IMPOSED WITHOUT NOTICE OR OPPORTUNITY TO CURE, VIOLATED FUNDAMENTAL DUE PROCESS.**

The Court's Order striking Plaintiff's declaration in its entirety was not a mere evidentiary ruling; The order's effect was case-dispositive, functioning as sanction that gutted Plaintiff's opposition to summary judgment. Imposing a sanction of this severity without providing notice that the declaration was in jeopardy and an opportunity to cure the specific defects constitutes a fundamental violation of due process that warrants vacatur.

**1. The Striking of the Entire Declaration Was a Severe, Case-Terminating Sanction, Not a Routine Evidentiary Ruling.**

The Fifth Circuit has drawn a clear distinction between managing evidence and imposing sanctions that decide a case. Striking a key affidavit at summary judgment is the functional equivalent of a default judgment, as it "preclude[s] a decision on the merits." *Gonzalez v. Trinity Marine Group, Inc.,* 117 F.4th 501, 508 (5th Cir. 2024). Here, by striking the declaration in toto, the Court did not merely exclude evidence; it eliminated the entire factual foundation of

Plaintiff's opposition, guaranteeing judgment for Defendants. This effect elevates the ruling from an evidentiary decision to the category of "draconian" sanctions that require heightened procedural safeguards. *Browning v. Kramer,* 931 F.2d 340, 344 (5th Cir. 1991).

**2. Binding Precedent Mandates a Surgical, Not a Sledgehammer, Approach to Defective Affidavits.**

The Fifth Circuit has explicitly condemned the striking of an entire affidavit as an abuse of discretion, mandating a more precise remedy. In Smith v. Chrysler, although unpublished, the court's reasoning is directly on point: "the proper remedy for a defective affidavit is to strike the improper portions, not the entire affidavit." No. 96-30110, 1996 WL 671277, at 2 (5th Cir. Oct. 31, 1996). This principle is rooted in fairness and proportionality. The Court's failure to employ this surgical remedy was a clear legal error, as it punished Plaintiff for all statements in the declaration, including those that were admissible and material, based on the deficiencies of only some.

**3. The Court's Order Was Entered in a Procedural missteps without the opportunity to be heard, Depriving Plaintiff of the Constitutionally Required Process.**

The timeline of this case reveals a critical due process violation: Plaintiff was never put on notice that the entirety of his declaration - the cornerstone of his opposition - was at risk of being stricken. The Court's Notice of in-person Hearing [Dkt. 133], entered on **October 9, 2025**, scheduled only a Pretrial Conference. It gave no indication that the Court was considering the dispositive sanction of striking the declaration.

The Court's Summary Judgment Order [Dkt. 141], which struck the declaration and granted judgment, was entered on **October 23, 2025.**

**This sequence demonstrates that Plaintiff was deprived of any opportunity to be heard on the specific issue of the sanction itself. He had no chance to:**

- Argue for the application of the correct legal standard from *Smith v. Chrysler.*

- Identify which specific paragraphs of the declaration were admissible and material.

- Submit a corrected affidavit or offer of proof to cure the technical deficiencies.

- Counsel's sole responsibility for its preparation and failure to file corrective errata /actions

- **Suppression of Evidence and Misrepresentation by Defendants (amounting to Fraud upon the Court)**

The Supreme Court has long held that **"the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"** *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). Here, the sanction was imposed first, and the opportunity to be heard on the merits was extinguished as a consequence. "This sequence—imposing the dispositive sanction first and extinguishing the opportunity to be heard on it afterwards— constitutes a violation of due process. Gonzalez, 117 F.4th at 508 (reversing where a party "did not have adequate notice that dismissal was a potential consequence").

The confluence of these errors - the imposition of a case-terminating sanction without notice, the failure to apply a less drastic remedy, and the subsequent attorney abandonment that prevented timely correction - created extraordinary circumstances that prevented a fair, merits- based adjudication. The Court is vested with the inherent authority to manage its docket, but that power is bounded by the Constitution's guarantee of due process. Where, as here, a litigant is blindsided by a dispositive ruling he had no chance to contest, the interests of justice and judicial integrity demand correction. Plaintiff respectfully urges the Court to exercise its equitable power under Rule 59(e) to vacate the judgment, thereby restoring Plaintiff's right to a fair hearing and a decision on the merits.

## IV. THE JUDGMENT IS TAINTED BY FRAUD UPON THE COURT AND MUST BE VACATED UNDER THE COURT'S INHERENT POWER.

The conduct of Defendants and their counsel in securing the summary judgment ruling amounts to fraud upon the court. A "fraud on the court" occurs when "a party has set in motion some

unconscionable scheme calculated to interfere with the judicial system's impartial adjudication of a matter." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). It is not merely the presentation of false evidence, but an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.*

Here, Defendants' counsel executed precisely such a scheme. The billing records reveal a coordinated strategy to present a distorted and decontextualized view of the record to the Court, going far beyond zealous advocacy. For instance, an entry dated **8/4/2025** by Amanda B. Robinson explicitly states the goal was to **"Look up Plaintiff's cites to Morris and Howard depositions to point out falsities or misrepresentations in defendants' reply."** (Time Index 17804219). This was not an effort to correct the record, but to *manufacture a narrative of pervasive fraud*. This is further evidenced by an entry on **8/8/2025**, where the same timekeeper spent 2.1 hours to **Work on defendant's motion to strike plaintiff's declaration to add specific misrepresentations [Exhibit C. Dr. Howard's testimony] and request for attorneys' fees based on plaintiff's personal fabrication of such testimony.** (Time Index 17808312). The billing records show a deliberate, billable effort to reframe citation inaccuracies - which could have been addressed through **objections or a curative instruction.** This concerted plan to "point out falsities" and allege "personal fabrication" was designed to taint the well and provoke the Court into taking the drastic, case-dispositive action it ultimately did. The Supreme Court has held that a judgment obtained through such methods is a nullity. **"Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."** *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

A fraud upon the court is "limited to the most egregious of cases, such as bribery of a judge or the fabrication of evidence by counsel." *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869,

872 (5th Cir. 1989). The deliberate fabrication of a narrative to mislead the court on a central issue - here, the very integrity of the Plaintiff's opposition - falls squarely within this category. This Court retains the inherent power "to vacate its own judgment upon proof that fraud has been perpetrated upon the court." *Hazel-Atlas*, 322 U.S. at 244. The combination of a declaration stricken for inaccuracies and the strategic, distorted exploitation of those inaccuracies by opposing counsel has tainted the well of justice, creating a proceeding so fundamentally unfair that the judgment cannot stand.

## V. THE CONDUCT OF DEFENDANTS' COUNSEL WARRANTS SCRUTINY, NOT REWARD.

Defendants' counsel's own conduct in these proceedings should bar them from receiving the extraordinary remedy of sanctions. Their aggressive litigation tactics demonstrate an intent to win through procedural maneuvering and by exploiting a pro se litigant's misfortune, rather than on the merits. **[Exhibit B-I, M,N,O].** The American Bar Association's *Model Rules of Professional Conduct* make clear that a lawyer's duty is to "use legal procedure only for legitimate purposes and not to harass or intimidate others." *Model Rules of Prof'l Conduct* r. 3.1 cmt. [1]. Defendants' counsel's actions - inflating billing entries, weaponizing sanctions, and suppressing probative testimony - fall squarely outside these ethical boundaries. Judicial goodwill requires that this Court not reward conduct that undermines both fairness and professional responsibility.

By seeking to profit from a fee award based on these tactics, counsel seeks to be rewarded for conduct that has contributed to the procedural morass and ultimate injustice in this case. Judicial integrity demands that this Court deny their request and, if necessary, consider referring the matter for disciplinary investigation.

**Counsel's conduct here violates this duty.** This pattern of conduct includes:

1. **Exploiting Attorney Abandonment for Tactical Advantage:** The Court granted Plaintiff's former counsel's motion to withdraw on November 19, 2025 [Dkt. 147]. Despite being aware that Plaintiff was newly pro se and navigating a complex sanctions process, Defendants' counsel immediately proceeded with their fee request **[Exhibit J Malissa Fwd email on November 4, 2025 order],** forcing a vulnerable opponent to defend against a sophisticated legal challenge without representation. This is the antithesis of the "restraint" mandated by Roadway Express.

2. **Weaponizing the Billing Process to Inflate Sanctions:** The billing records reveal a strategy to maximize the cost of their Motion to Strike. This includes:

**Redundant Research:** Multiple attorneys (Robinson, Morgan, Wilson) separately billing for researching the "basis for motion to strike" on consecutive days (Time Index 4, 5, 7, etc.).

**Excessive Drafting and Review:** Over 12 hours billed by multiple high-rate attorneys ($225/hr) for "drafting" and "reviewing" the motion to strike, including block-billed entries that make it impossible to discern the reasonableness of each task (Time Index 5, 7, 9, etc.).

**Charging for Internal Strategy to Escalate Allegations:** An entry on 8/8/2025 shows 1.1 hours billed for a "Conference with co-counsel regarding specific instances of fabricated testimony... and likely need for an extension of the page limit to address all such instances" (Time Index 17808310). They are literally charging for the time spent strategizing on **how to frame their allegations in the most damaging way possible to justify exceeding page limits.**

By seeking to profit from a fee award based on these tactics including billing for the time spent devising their strategy to allege "fabrication" counsel seeks to be rewarded for conduct that has contributed to the procedural morass and ultimate injustice in this case. Judicial integrity demands that this Court deny their request. A legal system that permits a party to run up exorbitant fees through aggressive tactics and then shift those very fees to an abandoned pro se

litigant as a "sanction" inverts justice. The Court should not endorse such a result and, given the serious nature of these tactics, should consider referring the matter for disciplinary investigation.

## VI. DEFENDANTS' COUNSEL'S IMPROPER CONDUCT WARRANTS DENIAL OF THEIR FEE REQUEST AND JUDICIAL CENSURE.

The conduct of Defendants' counsel throughout these proceedings culminating in a premature and tactically driven request for fees demonstrates a pattern of bad faith that disqualifies them from the equitable remedy they seek. This Court possesses the inherent authority to deny sanctions where the moving party's own conduct fails to meet the standards of professional integrity and fairness. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

### A. Counsel Rushed to Profit from a Non-Final Judgment, Violating Principles of Judicial Finality.

Defendants' submission of their fee request was not only aggressive but procedurally improper. This Court's Order [Dkt. 147] explicitly confirmed that **no final judgment exists under Federal Rule of Civil Procedure 58**. A request for attorneys' fees is inherently a request for a *final accounting* of a resolved case. *See, e.g., Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988) (noting that a decision on the merits is a "final decision" even when a request for attorneys' fees remains unresolved). Here, by contrast, Defendants seek fees for a case that lacks finality, a cart-before-the-horse maneuver that reveals an intent to harass, not to legitimately conclude the litigation. This haste, strategically timed to coincide with Plaintiff's abandonment by counsel, is a blatant attempt to secure a tactical advantage against an unrepresented party and constitutes a misuse of the judicial process.

### B. Counsel's Exploitative Tactics Demonstrate a Lack of the Good Faith Required for Sanctions.

Sanctions are an extreme remedy reserved for cleansing the judicial process, not a weapon to punish a vulnerable adversary. The Supreme Court has consistently cautioned that "[s]anctions must be used with the utmost care and only in the most extreme circumstances." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980). Defendants' counsel's conduct fails this test entirely:

- **Exploiting Procedural Vulnerability:** They proceeded with this complex fee request against a newly *pro se* litigant immediately following the Court-sanctioned withdrawal of his counsel [Dkt. 147, 158], exploiting his lack of representation at his most vulnerable moment.

- **Weaponized Billing:** The records reveal a deliberate inflation of fees, including redundant research by multiple attorneys and block-billed entries for strategizing how to frame allegations of "fabricated testimony" (Time Index 17808310). This is not zealous advocacy; it is a billable campaign to escalate conflict.

- **Procedural Overkill:** The filing of numerous motions *in limine* [Dkt. 134-140] exemplifies a strategy of overwhelming opposition through volume, not merit.

**To grant Defendants' fee request under these circumstances would be to reward the very misconduct that the Court's inherent power is designed to check.** It would signal that procedural gamesmanship and exploitation of an adversary's distress are acceptable litigation tactics. This Court's judicial goodwill - its "reservoir of goodwill and credibility upon which the court may draw to summon respect for its judgments," *In re McDonald*, 489 U.S. 180, 184 (1989) - is invoked not to aid such conduct, but to condemn it.

The only path to preserve the integrity of these proceedings is to deny Defendants' request for sanctions and refer their conduct for appropriate disciplinary scrutiny. The Court must reaffirm that its processes exist to serve justice, not to be misuse against those who have been abandoned and procedurally disadvantaged.

**Summary of Key Evidence from the Record:**

**Procedural Exploitation:** Proceeding with the sanctions request against a newly pro se Plaintiff immediately after the withdrawal of counsel [Dkt. 147, 158].

**Inflated Billing Evidence:**

- Time Index 4, 5, 7 (Morgan, Wilson): Redundant research on "basis for motion to strike."

- Time Index 5, 7, 9 (Wilson): Over 10 hours collectively for "drafting" the motion to strike.

- Time Index 17808310 (Robinson): Billing for a "conference" to strategize on framing allegations of "fabricated testimony."

This argument powerfully reframes the narrative, painting Defendants' counsel as active architects of an unfair process who now seek to be paid for their efforts. It provides the court with a compelling, evidence-based reason to deny the fee request outright.

## VII. THE OVERWHELMING INTERESTS OF JUSTICE DEMAND VACATUR AND A TRIAL ON THE MERITS.

Finally, the ultimate "pillar" is the court's fundamental duty to do justice. The interests of justice are not served by allowing a judgment to stand that was predicated on a record the Court itself found to be "replete with misrepresentations" and "outright fabricated quotations," and which were decided only after Plaintiff was abandoned by his counsel.

The Fifth Circuit has consistently and unequivocally held that **"there is a strong policy favoring the resolution of cases on their merits."** *United States v. $19,000.00 in U.S. Currency*, 515 F. App'x 359, 363 (5th Cir. 2013) (per curiam) (citing *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985)). This is not a mere preference, but a cornerstone of the federal judicial system. The confluence of errors here the drastic sanction of striking the entire declaration without an opportunity to cure, the subsequent attorney abandonment and withdrawal [Dkt. 147], and the resulting entry of summary judgment based on an incomplete and now-contested record constitutes the kind

of **"extraordinary circumstances"** that warrant relief from a judgment to prevent a manifest injustice. *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642-43 (5th Cir. 2005) (discussing the high standard for relief from judgment in the interests of justice).

The Supreme Court has instructed that "the public interest disfavors punishing a client for his attorney's conduct." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). To allow this judgment, obtained in the wake of counsel's failure and withdrawal, to stand would do precisely that. The only path to restore public confidence in the judicial process, rectify the compounded procedural injustices, and ensure a just outcome is to vacate the tainted judgment. This case must be decided on a complete and honest record, tested by the crucible of trial, not buried by a sanction for a declaration Plaintiff never had a chance to correct.

## VIII. THE LEGAL IMPROPRIETY OF STRIKING THE DECLARATION AND THE MANIFEST INJUSTICE OF IMPOSING SANCTIONS

## I. THE COURT'S ORDER RELIED ON A LEGALLY ERRONEOUS APPLICATION OF RULE 56(C)(4)

The Court's summary judgment order rested on the categorical striking of Plaintiff's declaration, a drastic remedy that is only warranted under specific, narrow circumstances that are absent here. The Defendants' own time entries reveal they researched the correct, more nuanced legal standard, which the Court's order failed to apply.

## TABLE 1: THE LEGAL STANDARD VS. THE COURT'S APPLICATION

| Legal Principle | Correct Application (As Researched by Defendants) | Court's Erroneous Application |
|---|---|---|
| **Rule 56(c)(4) Requirement** | A declaration "used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." | The Court applied a perfection standard, striking the declaration for any perceived imperfection, rather than separating admissible from inadmissible portions. |
| **The "Sham Affidavit" Doctrine** | Designed to prevent a party from creating a "sham" fact issue by submitting an affidavit that *contradicts* their own prior testimony | Plaintiff's declaration did not contradict any prior sworn testimony or deposition. It was |

| | | |
|---|---|---|
| | to avoid summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). | his primary, good-faith submission of his factual narrative. The doctrine is inapplicable. |
| **Remedy for Deficiencies** | The court should not strike the entire declaration. Instead, it must **"disregard only those portions of an affidavit that are inadequate** and consider the rest." *Lee v. Nat'l Life Ins. Co.*, 632 F.2d 524, 529 (5th Cir. 1980). | The Court struck the declaration *in its entirety*, violating the fundamental principle that the evidence must be viewed in the light most favorable to the non-moving party at summary judgment. |

**Legal Narrative:**

Defendants' billing records reflect extensive research into Rule 56(h) and summary judgment standards, confirming their awareness of the controlling legal framework, which requires a careful, surgical excision of specific objectionable portions rather than the wholesale striking of an entire declaration. By striking the declaration in its entirety, the Court departed from established precedent and committed a manifest error of law.

The Fifth Circuit has made clear that courts must disregard only the inadmissible portions of an affidavit or declaration, while considering the remainder for purposes of summary judgment. See *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234–35 (5th Cir. 2016) (holding that self-serving testimony, if based on personal knowledge, can create genuine issues of material fact); *Cloud49, L.L.C. v. Rackspace Tech., No. 24-50385, 2025 WL [pin cite] (5th Cir. Mar. 11, 2025) (per curiam) (unpublished)* (reaffirming that summary judgment requires consideration of admissible portions rather than wholesale exclusion). The Court's order here, striking the entire declaration, was outcome-determinative: it deprived Plaintiff of his essential factual narrative and ensured that summary judgment would be granted on an incomplete record.

A ruling based on such a misapplication of controlling law constitutes a "manifest error of law" warranting relief under Rule 59(e). See *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (Rule 59(e) relief appropriate to correct manifest errors of law or fact). Judicial

integrity and goodwill require correction of this error to restore a merits-based adjudication on a complete and accurate record.

## II. THE DECLARATION'S ALLEGED DEFICIENCIES ARE ATTRIBUTABLE TO COUNSEL, NOT CLIENT BAD FAITH

The core justification for both striking the declaration and initiating Rule 56(h) sanctions was the finding of "bad faith." This finding is fundamentally misplaced and ignores the division of responsibility between an attorney and their client.

**TABLE 2: ALLOCATION OF RESPONSIBILITY FOR THE DECLARATION**

| Role | Responsibilities | Evidence of Performance |
|---|---|---|
| **Plaintiff (Client)** | - Provide factual information in good faith<br>- Sign a document plaintiff believes to be reviewed and vet by Begley before final submission. And it was under Time constraint | - Provided information to counsel<br>- Signed the declaration marked "Draft Two," indicating it was a work-in-progress submitted by his attorney |
| **Samuel Begley (Counsel)** | - **Duty of Competence:** Ensure the declaration is procedurally and factually sound before filing.<br>- **Ethical Duty (Rule 3.3):** Not offer evidence he knows to be false; correct false statements. | - **Admitted Failure:** "It was **my responsibility** to ensure that your declaration was accurate... I take full responsibility for this oversight." (Ex. A)<br>- **Negligent Filing:** Filed a document marked "Draft Two," a *prima facie* indicator of an unfinished product. |

## IX. THE JUDGMENT IS VOIDABLE DUE TO SUPPRESSION OF EVIDENCE AND MISREPRESENTATION BY DEFENDANTS ON THE COURT AND OPPOSING PARTY MISCONDUCT

This case presents more than attorney error; it reveals a deliberate effort by Defendants to pervert the judicial process by suppressing exculpatory evidence and presenting a knowingly false narrative to the Court. In substance this constitutes fraud on the court, which "embraces only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual

manner its impartial task of adjudging cases." Wilson v. Johns-Manville Sales Corp., 873 F.2d 869, 872 (5th Cir. 1989).

## DEFENDANTS' DISCOVERY OBSTRUCTION DEMONSTRATES BAD FAITH AND UNDERCUTS ANY CLAIM OF "REASONABLE" LITIGATION CONDUCT

Defendants' request for fees as a "sanction" is profoundly ironic given their own willful failure to comply with fundamental discovery obligations. Plaintiff's May 21, 2025, filing **(Exhibit K Honorable Judge Harris's Discovery Directive and Defendants' Non-Compliance)** catalogues six critical, narrow, and relevant discovery requests that Defendants have improperly resisted. This obstruction is not a minor discovery dispute; it is a strategic effort to withhold evidence central to Plaintiff's claims of discrimination and pretext.

### A. The Withheld Discovery is Material, Narrowly Tailored, and Directly Relevant

1. **Personnel File of the Replacement (Andrew Huettner):** The personnel file of an individual who replaced a plaintiff in a discrimination case is quintessential comparative evidence. See Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000) (comparator evidence is central to proving discrimination); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (holding that replacement employee personnel files are discoverable as relevant comparator evidence). Plaintiff's email of May 21, 2025 **(Exhibit K Honorable Judge Harris's Discovery Directive and Defendants' Non-Compliance),** clarifies the request is for approximately 25 specific documents, not a "fishing expedition."

2. **Annual Survey Records (Items 3 & 4):** UMMC alleges non-performance regarding MR Annual Surveys as a justification for termination. Plaintiff seeks only 75 specific PDFs (45 annual surveys + related weekly logs for nine scanners) to prove his

performance met or exceeded departmental norms. Defendants' refusal to produce the very records they cite as a termination rationale is the height of gamesmanship.

3. **Strategic Planning Documents (Items 5 & 6):** Documents concerning Dr. Duszak's plan for the Medical Physics Section (one document) and mandated staffing levels (two documents) are critical to proving that the elimination of Plaintiff's position was pretextual and that Defendants knowingly operated without a mandated on-site physicist, compromising patient safety and accreditation.

4. ACR MR Quality Control Manual, clearly states: *"A qualified medical physicist or MRI scientist on-site (or one who is readily available) should administer each facility's QC program."* - ACR QC Manual, p. 10.

## B. This Obstruction is Part of a Broader Pattern of Suppression:

This discovery intransigence mirrors the conduct Plaintiff alleged in his declaration - the suppression of the EEOC audio recording and the Howard deposition. Defendants' litigation strategy appears designed to win not on the merits, but by preventing Plaintiff from assembling a factual record. The strike motion was not a necessary correction, but a tactical maneuver designed to cripple Plaintiff's opposition and manufacture a **pretext for a fee award.** Seeking fees after engaging in such obstructive conduct is unreasonable as a matter of law. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (a court may assess fees as a sanction for "bad-faith conduct ... which abuses the judicial process").

## C. Honorable Judge Harris's Discovery Directive and Defendants' Non-Compliance

During the May 22, 2025 telephonic discovery conference, Honorable Magistrate Judge Andrew S. Harris directed Plaintiff to serve supplemental discovery responses by May 30, 2025, and expressly authorized Plaintiff to file a motion to compel on any unresolved issues

following further discussions among counsel (**Minute Entry, Dkt. 5/22/2025**). Despite this clear directive, neither Defendants' counsel Malissa Wilson nor Plaintiff's then-counsel Samuel Begley produced the documents Plaintiff had specifically requested via email and text messages - including six narrowly tailored categories of PDFs central to Plaintiff's claims of discrimination and pretext (**Exhibit K Honorable Judge Harris's Discovery Directive and Defendants' Non-Compliance).** The requested materials included: (1) the personnel file and nature of duties of Dr. Andrew Huettner, Plaintiff's replacement; (2) six monthly survey documents; (3) forty-five MR Annual Surveys and related weekly logs for nine scanners; (4) Dr. Duszak's strategic plan for the Medical Physics Section; and (5) mandated staffing level documents. Their failure to comply with Honorable Judge Harris's instruction and to engage in good-faith resolution of discovery disputes underscores a broader pattern of obstruction and suppression that directly undermines Defendants' claim to "reasonable" litigation conduct. Seeking fees while disregarding a court-ordered discovery directive exemplifies bad-faith litigation conduct and further demonstrates why Defendants' Rule 56(h) request must be denied. The coordinated failure of both counsels to comply with the Court's directive, despite Plaintiff's documented requests, reflects in substance **a collusive disregard of discovery obligations and constitutes bad-faith litigation conduct.** Their joint inaction deprived Plaintiff of evidence essential to his claims while positioning Defendants to seek sanctions, a tactic that abuses the judicial process and underscores why their Rule 56(h) fee request must be denied.

## X. EMPLOYMENT DISCRIMINATION PRETEXT EVIDENCE - Conclusive And Compelling Evidence Of Pretext Warranting Reversal Of Summary Judgment And For Jury Trial

### I. Fundamental Error in the Court's Prior Ruling

The Court's summary judgment order rests on a fundamental and reversible error: it accepted Defendants' proffered reasons for Plaintiff's nonrenewal at face value, despite the existence of newly discovered and previously suppressed evidence that proves those reasons were a sham. This evidence reveals a pattern of "shifting standards" so stark and illogical that no reasonable juror could credit the employer's explanation.

Under the controlling standard of *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), this constitutes "specific and substantial evidence" of pretext that not only defeats summary judgment but affirmatively supports an inference of discriminatory intent. Granting this Motion is therefore essential to correct a manifest injustice and restore this case to its proper forum - a trial by jury.

## II. Suppressed Evidence Demonstrates Pretext and Requires Jury Resolution

The ruling rests upon an incomplete and distorted record, the product of adversary misrepresentation and conflicted counsel's abandonment. Newly discovered and previously suppressed evidence demonstrates that Defendants' proffered reasons for Plaintiff's termination were false, inconsistent, and unworthy of credence.

Under controlling precedent, this evidence creates genuine issues of material fact that must be resolved by a jury. As *Reeves* makes clear, proof that the employer's explanation is "unworthy of credence" is itself probative of intentional discrimination. The credibility of Defendants' shifting rationales cannot be weighed by the Court at summary judgment; it is a quintessential jury question.

This is not a request for a "do-over." It is a plea to restore the integrity of these proceedings and to ensure that substantive rights under Title VII are adjudicated on a full and fair record. The law, and fundamental fairness, demand no less.

## III. Factual Basis: Conclusive Evidence of Pretext

### 1. Shifting Standards in Credential Requirements

o   Defendants claimed ABMP/ABR certification was "essential" for the MRI Physicist role.

o   Yet, deposition testimony and appointment documents confirm that Plaintiff's successor, Dr. Andrew Huettner, lacked these very certifications and even the Board Eligibility when compared to Plaintiff.

o   Dr. Duszak stated Dr. Huettner is a Clinical Physicist while in contrary Plaintiff is not a Clinical faculty (Dkt. 121.6).

o   This contradiction eviscerates Defendants' rationale and proves the requirement was pretextual.

## 2. Outsourcing of "Critical" Duties

o   Defendants alleged Plaintiff's performance on MRI accreditation duties was deficient.

o   Immediately after Plaintiff's departure, Defendants outsourced these same duties to Deep South Physics.

o   This proves the work was necessary, but Defendants chose to eliminate Plaintiff rather than retain him - severing any link between alleged performance issues and business necessity.

## 3. Corroborative Evidence of Performance and Contributions

o   Testimony from Dr. Candace Howard confirmed Plaintiff's leadership had "no problems" and termination was due to a "business model" change, not performance.

o   Emails and institutional records show Plaintiff advocated for safety protocols and contributed nationally significant technical achievements.

o   This mosaic of evidence demonstrates Plaintiff was qualified, contributing professionally removed under false pretenses.

## V. Legal Standards and Authorities

## 1. Rule 56, Fed. R. Civ. P.

o   Summary judgment is proper only when no genuine dispute of material fact exists.

     o  Plaintiff's evidence of pretext creates genuine disputes requiring jury resolution.

2. **Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)**

- o A prima facie case plus evidence that the employer's reason is false permits a jury to infer discrimination.
- o Plaintiff's evidence directly undermines Defendants' rationale, mandating jury consideration.

3. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)**

- o Credibility determinations are for the jury, not the Court.
- o Defendants' contradictions present quintessential credibility issues.

4. **Celotex Corp. v. Catrett, 477 U.S. 317 (1986)**

- o The moving party bears the burden of showing no genuine issue of material fact.
- o Defendants failed to meet this burden; suppressed evidence reveals genuine disputes.

5. **Title VII of the Civil Rights Act of 1964**

- o Prohibits discriminatory termination and guarantees substantive rights to fair treatment.
- o Plaintiff's claim falls squarely within Title VII protections.

6. **St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)**

- o Once pretext is shown, the factfinder may infer discrimination.
- o Plaintiff's evidence conclusively shows pretext; credibility belongs to the jury.

## V. Argument

1. The suppressed evidence demonstrates Defendants' explanations are false and inconsistent.

2. Under *Reeves*, falsity alone suffices to send the case to a jury.

3. Rule 56 requires vacatur because genuine disputes of material fact exist.

4. Credibility determinations regarding Defendants' shifting standards are for the jury under *Anderson* and *Hicks*.

5. Defendants failed to meet their burden under *Celotex*.

6. Title VII rights cannot be adjudicated on a distorted record; fairness demands jury review.

## VI. Respectful Plea for Judicial Integrity

The Court is entrusted with the sacred duty to ensure judgments rest upon complete and accurate records. Allowing summary judgment to stand would ratify a manifest injustice: penalizing a blameless client for counsel's breaches and permitting an employer to benefit from contradictory conduct.

With utmost respect, Plaintiff requests that this Court vacate the summary judgment order and permit a jury to fulfill its constitutional role as arbiter of disputed facts and credibility. The law, and fundamental fairness, demand no less.

For the foregoing reasons, Plaintiff respectfully requests that the Court vacate the summary judgment order and restore this case to its proper forum - a trial by jury.


## XI. Admissible Material Facts That Uncovers Fraud Upon the Court Dkt. 140

Defendants' Motion *in limine* to exclude Plaintiff's testimony regarding his timely completion of the ACR surveys is not an attempt to enforce the rules of evidence; it is an effort to bury the truth. Plaintiff's statement that he completed the required surveys by August 2022 is not "opinion"; it is a verifiable fact within his personal knowledge. That fact alone dismantles Defendants' pretextual claim of "delay." The record conclusively demonstrates that the prior year's submission occurred on **October 31, 2021**, a date materially misrepresented by Dr. Duszak in sworn filings as "August 2021." This is not a minor oversight; it is a **fraud upon the Court**, fabricated to manufacture a performance deficiency where none existed. [Exhibit L: Admissible Material of Facts That Uncovers Fraud Upon the Court Dkt. 140]


## XII. THE COURT'S RELIANCE ON AN UNSUBSTANTIATED "INTERPERSONAL SKILLS" RATIONALE, CONTRADICTED BY THE RECORD AND

**PERPETUATED BY COUNSEL'S ABANDONMENT, CONSTITUTES MANIFEST ERROR AND INJUSTICE**

The Court's summary judgment ruling accepted Defendants' stated justification for termination - Plaintiff's alleged "lack of interpersonal skills" - without scrutinizing whether this reason was pretextual. This was a fundamental legal error, compounded by a factual error, as the sworn testimony of Defendants' own key manager, Dr. Candace Howard, directly eviscerates this rationale. The Court's adoption of this false narrative was a direct consequence of the manifest injustice created by former counsel's conflict of interest and failure to present the record evidence.

**A. The Court Committed a Legal Error by Failing to Apply the Pretext Framework, Transforming a Disputed Issue of Intent into an Improper Factual Finding.**

At summary judgment in an employment discrimination case, the court's role is not to determine if the employer's stated reason was *wise, fair, or correct*, but whether the *stated reason was the true reason* or a pretext for discrimination. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002).

**TABLE 1: LEGAL ERROR IN THE PRETEXT ANALYSIS**

| Controlling Legal Principle | Application in This Case | Court's Erroneous Application |
|---|---|---|
| The question is not whether the employer made a correct decision, but a truthful one. *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). | Even if Plaintiff had poor skills, the case turns on whether UMMC *honestly believed that he did* and acted in good faith on that belief. | The Court endorsed the "interpersonal skills" reason as valid, substituting its judgment for the jury's role to assess the employer's credibility and intent. |
| A plaintiff can show pretext by demonstrating that the employer's reason is false or "unworthy of credence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000). | Dr. Howard's testimony provides direct evidence that the reason is "unworthy of credence." | The Court made a factual finding that insulated Defendants' rationale from the jury's scrutiny, which is prohibited at summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). |

The material fact is the *employer's intent*, not the objective truth about an employee's personality. By making a finding on Plaintiff's character, the Court improperly resolved the

central disputed issue of pretext - whether Defendants' stated reason was believable - usurping the role of the jury.

**B. The Court's Finding is a Factual Error Directly Contradicted by the Unimpeachable Sworn Testimony of Defendants' Own Manager.**

The record is devoid of any admissible evidence - no performance review, written warning, or sworn testimony - that objectively substantiates the claim of a "lack of interpersonal skills" severe enough to justify termination. On the contrary, the deposition of Dr. Howard, the Plaintiff's direct supervisor for research, provides uncontroverted evidence to the contrary.

**TABLE 2: Dr. HOWARD'S TESTIMONY VS. DEFENDANTS' NARRATIVE**

| Defendants' Claim (Unsupported by Record) | Dr. Howard's Sworn Testimony (Exhibit C) | Legal Significance |
|---|---|---|
| Plaintiff had interpersonal difficulties. | "Did you visualize interpersonal difficulties with coworkers?" - "No." (Howard Dep. 8:12–14) | Directly negates the factual basis for the stated reason for termination. |
| Plaintiff had "maladaptive communication." | "I don't know what that means." (Howard Dep. 9:22–25) | Demonstrates the vague, unsubstantiated nature of the allegations. |
| Plaintiff was "dismissive and condescending." | "I personally never saw Paul being dismissive and condescending... I never saw it." (Howard Dep. 14:12–17) | A direct, eyewitness rebuttal from a key manager. |
| Termination was performance-based. | "That was the gist... they were changing the business model for this, yes." (Howard Dep. 27:1–5) | Provides an alternative, non-discriminatory reason (business decision) that undermines the "interpersonal skills" pretext. |

The Court's finding is thus not merely unsupported by evidence; it is actively contradicted by the most relevant evidence in the record. This is a "manifest error of fact" that can and must be corrected under Rule 59(e). *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

**C. This Manifest Injustice Was Compounded by Former Counsel's Ethical Breaches, Which Prevented a Full and Fair Adjudication.**

The Court's error was not happenstance. It was the direct result of a broken adversarial process. Former counsel, labored by a conflict of interest recognized by this Court (ECF No. 147), abandoned his duty to Plaintiff.

- Conflict of Interest: Counsel had a personal interest in avoiding scrutiny of his own failure to properly vet the declaration, which created a conflict that prevented him from zealously advocating for Plaintiff.

- Failure to Rebut: Most critically, counsel received Plaintiff's detailed Sur-Reply and evidence rebutting the "interpersonal skills" claim but failed to file it. This abandonment left Defendants' false narrative unrebutted, allowing the Court to be misled into accepting it as fact.

- Suppression of Evidence: By not leveraging Dr. Howard's devastating testimony in opposition to summary judgment, counsel effectively suppressed probative evidence, contributing to the suppression of material evidence and misrepresentation affecting the integrity of the proceedings, which is in substance a "fraud on the court" and denying Plaintiff the "meaningful opportunity to be heard" required by due process. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Sanctioning a client for his attorney's misconduct in a situation that has prevented a ruling on the true merits is the definition of manifest injustice. *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286-87 (5th Cir. 1985). The Court's inherent power and authority under Rule 59(e) exist precisely to correct such fundamental breakdowns in the judicial process.

**D. THE COURT'S INHERENT AUTHORITY TO PREVENT MANIFEST INJUSTICE**

This case presents the extraordinary circumstance warranting the exercise of the Court's inherent authority "to achieve the orderly and expeditious disposition of cases" and to rectify clear errors that result in injustice. Chambers, 501 U.S. at 43. A manifest injustice has occurred: a tenure-track professor was terminated under a "for cause" contract the Court misread, his

direct evidence of discrimination was ignored, his uncontested proof of damage was overlooked, and he now faces sanctions for his former attorney's failure.

## XIII. CONCLUSION

Taken together, the six pillars of argument form an unassailable structure demonstrating that sanctions against Plaintiff are legally baseless, equitably untenable, and institutionally corrosive. The Court's inherent power and constitutional duty to ensure fairness require a single, just outcome: to vacate the judgment tainted by fraud and abandonment and withdrawal, deny Defendants' billing submissions, and restoration this case for adjudication on a complete and honest record.

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' request for sanctions and attorneys' fees and grant the equitable relief sought in this submission. As the Supreme Court has cautioned, sanctions must be "imposed with restraint and only upon clear evidence of misconduct," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). The Fifth Circuit has further emphasized that sanctions must be tailored to the responsible party and not unfairly imposed on a client acting in good faith, *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988) (en banc). The only proper course is to deny sanctions, vacate the tainted summary judgment, and reaffirm this Court's commitment to the fundamental principle that "justice cannot stand upon fraud or abandonment," *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

The record before this Court is not one of bad faith by Plaintiff, but of a process that went awry. It reveals an attorney who abandoned his client, indulged in suppression of probative evidence, a declaration that was struck in its entirety contrary to law, and a fee request inflated by 65.6 hours of duplicative billing that is both unreasonable in scale and unjust in principle. Sanctions under Rule 56(h) are a serious remedy, reserved for cleansing the judicial process. To impose

them here would have the opposite effect: punishing a litigant for relying on his lawyer while rewarding tactics that obscured the truth.

*Integrity requires denial of Defendants' fee request and vacatur of judgment to restore adjudication on a complete record.* Fidelity to judicial fairness compels a single just result: vacatur of the compromised judgment and restoration of adjudication on a complete and honest record.

### Respectful Statement of Judicial Goodwill

Plaintiff expresses his sincere appreciation for the Court's time and attention in this matter. Recognizing the Court's heavy docket and the importance of orderly procedure, Plaintiff pledges to conduct himself with the utmost professionalism, to avoid unnecessary burden on the Court, and to ensure that his filings are concise, accurate, and procedurally compliant.

### Pro Se Disclaimer

1. Plaintiff is proceeding pro se, and this filing has not been reviewed or prepared by a licensed attorney. All statements are made in good faith based on Plaintiff's understanding of the record and applicable law.

2. If any portion of this filing is deemed misleading, inaccurate, or unsupported, Plaintiff respectfully requests the opportunity to clarify or withdraw. Likewise, if any portion is deemed procedurally inadequate or improper, Plaintiff respectfully requests leave to correct or supplement the record accordingly.

3. Plaintiff affirms his continuing commitment to procedural fairness, accuracy, and truthfulness in all submissions to this Court, and respectfully seeks the Court's indulgence in construing this filing liberally in light of his pro se status.

This request echoes the principle that courts construe pro se filings liberally. See *Haines v. Kerner*, 404 U.S. 519 (1972).

**PRAYER FOR RELIEF**

**WHEREFORE,** for the interdependent reasons set forth in the Six Pillars above, Plaintiff respectfully prays that this Honorable Court exercises its inherent authority and equitable powers to remedy the profound miscarriage of justice that has occurred. Plaintiff specifically requests that the Honorable Court:

**1. DENY** Defendants' Motion for Sanctions and Request for Attorneys' Fees in their entirety;

**2. DECLINE** to impose any monetary sanction on Plaintiff in the Rule 56(h) proceeding;

**3. VACATE** the October 23, 2025 Summary Judgment Order [Dkt. 141] (A) pursuant to Rule 59(e) and the Court's inherent authority, based on the manifest errors of law and fact detailed above; (B) as voidable under Rule 60(b)(3) and (6) due to fraud on the court, and fact;

(C) insofar as it relies on improper credibility determination and unsubstantiated, extra-record factual findings that constitute reversible error.

**4. Find and conclude that Defendants' willful discovery obstruction and disregard of Honorable Magistrate Judge Harris's May 22, 2025, directive constitute bad-faith litigation conduct;**

**5. DECLARE** that no final judgment exists pursuant to Federal Rule of Civil Procedure 58, as confirmed by this Court's Order [Dkt. 147], and that any purported judgment is therefore void;

**6. COMPEL** former counsel Samuel L. Begley to immediately comply with this Court's Order [Dkt. 147] by providing the complete client file, the one-week deadline for compliance having expired on November 26, 2025;

**7. GRANT** reconsideration, set aside the judgment, and RESTORE this action to the active docket, for further proceedings consistent with a merit-based adjudication;

**8. APPLY ADVERSE INFERENCES** against Defendants at trial for the willful suppression and withholding of material, exculpatory evidence, to restore the integrity of these proceedings;

**9. ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW** that:

(a) Plaintiff's former counsel, Samuel L. Begley, operated under a conflict of interest and constructively abandoned his client; and

(b) Defendants and their counsel suppressed material, exculpatory evidence and engaged in misrepresentations that constitute fraud on the court;

**10. REFER** the conduct of Defendants' counsel, as documented herein, for judicial review or to the appropriate state bar disciplinary authority for investigation of potential violations of the Mississippi Rules of Professional Conduct;

**11. GRANT** Plaintiff leave to amend or correct his declaration and to supplement the record with the newly presented and previously suppressed evidence; and

**12. Grant such other and further relief** as the Court deems just and proper to preserve the integrity of these proceedings.

**Respectfully submitted, Plaintiff reiterates his trust in this Honarable Court's unwavering commitment to fairness, integrity, and the rule of law.** *Justice cannot reward deception while punishing diligence; integrity demands denial of Defendants' fee request.*

Dated : 12 :05. 2025

**/s/ Mohan Pauliah**
**Dr. Mohan Pauliah, Ph.D.**
Plaintiff, Pro Se
100 Sagefield Drive Canton, MS 39046
Email: pauliahmohan@gmail.com | Phone: (347) 949-3224

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of December, 2025, I caused a true and correct copy of the foregoing *Plaintiff's Omnibus Opposition to Defendants' Fee Request and Submission for Reconsideration Based on Factual Error, Legal Error, and Manifest Injustice* to be served via the Court's CM/ECF electronic filing system, which will send notification of such filing to all counsel of record and by email.

Respectfully submitted,

/s/ Mohan Pauliah

**Dr. Mohan Pauliah, Ph.D.**
Plaintiff, Pro Se